UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GONZALEZ PRODUCTION SYSTEMS, INC.,

    Plaintiff/Counter-Defendant,

v.

    Case No. 13-cv-11544

MARTINREA INTERNATIONAL INC.,

    Defendant,

MARTINREA HEAVY STAMPINGS INC.,

    Defendant/Counter-Plaintiff.

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

_____/

**OPINION AND ORDER RESOLVING "EVIDENTIARY ISSUE" ONE AND TWO IN GONZALEZ'S MOTION *IN LIMINE* [184], GRANTING IN PART AND DENYING IN PART MARTINREA'S MOTIONS *IN LIMINE* [186, 190], AND DENYING MARTINREA'S MOTION *IN LIMINE* [188]**

**I. INTRODUCTION**

Gonzalez Production Systems, Inc. ("Gonzalez" or "Plaintiff/Counter-Defendant"), commenced this action on April 4, 2013 against Martinrea International Inc. ("Martinrea International" or "Defendant"). *See* Dkt. No. 1. On May 17, 2013, Gonzalez filed an Amended Complaint adding Martinrea Heavy Stampings, Inc. ("Martinrea Stampings" or "Defendant/Counter-Plaintiff") as an additional Defendant in this dispute. *See* Dkt. No. 8. In the Amended Complaint, Gonzalez contends that both Martinrea International and Martinrea Stampings (collectively "Martinrea" or "Defendants") are liable for breach of contract, or, in the alternative, liable in equity under the theory of promissory estoppel. *Id.*

On June 17, 2013, Martinrea Stampings filed a counterclaim against Gonzalez for breach of contract. *See* Dkt. No. 201. On November 17, 2014, this Court entered an Order Denying

Martinrea's Motion for Summary Judgment and Granting Gonzalez's Motion for Partial Summary Judgment. *See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-cv-11544, 2014 WL 6455592, at *1 (E.D. Mich. Nov. 17, 2014).   On January 26, 2015, less than a month before trial was originally set to begin, and after a contentious dispute regarding the admissibility of the parties' expert reports, this Court amended the scheduling order and postponed the trial to quell concerns about prejudice to the parties. *See* Dkt. No. 155 (moving trial to August 11, 2015); *see also* Dkt. No. 161 (moving trial to September 22, 2015 at the request of the parties).

Martinrea has now filed ten Motions *in Limine* in preparation for trial [168, 170, 174, 180, 181, 182, 186, 188, 190], while Gonzalez filed one Motion *in Limine* [184] covering five distinct "Evidentiary Issues." The Motions are fully briefed. Given the extensive disputes the parties have had regarding expert testimony in this case, the Court held a *Daubert* hearing for the proposed experts on August 10, 2015.   After reviewing the briefs and arguments of the parties, and listening to the experts' testimony, the Court will resolve Gonzalez's "Evidentiary Issues Numbers One and Two" per the stipulation of the parties, **GRANT** in part and **DENY** in part Martinrea's Motions *in Limine* [186, 190], and **DENY** Martinrea's Motion *in Limine* [188].  The Court's Opinion and Order addressing the admissibility of the expert testimony is set forth in detail below. The remaining Motions *in Limine* [168, 170, 174, 180, 181, 182, 184] will be addressed in a separate and forthcoming Opinion and Order.

## II. Legal Standard

The admissibility of testimony from expert witnesses is governed by Rule 702 of the Federal Rules of Evidence. Pursuant to Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the following criteria are met:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court has indicated that Rule 702 places a special obligation on the trial court to serve as a gatekeeper, ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The "gatekeeping obligation" is not limited to "scientific" expert testimony, but applies to all expert testimony. *See Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The proponent of the expert must establish admissibility by a preponderance of the evidence. *See Nelson v. Tenn. Gas Pipeline Co.,* 243 F.3d 244, 251 (6th Cir. 2001).

In *Daubert,* the Supreme Court provided a non-exclusive checklist for trial courts to consult when evaluating the reliability of expert testimony. 509 U.S. at 593, 113 S.Ct. 2786, 125 L.Ed.2d 469. In doing so, "*Daubert* attempt[ed] to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctrs., Inc.,* 563 F.3d 171, 176–177 (6th Cir. 2009). District courts must determine whether the expert's testimony meets three requirements: (1) the expert witness must be qualified by "knowledge, skill, experience, training or education," (2) the proffered testimony must be relevant and "assist the trier of fact to understand the evidence or to determine a fact in issue," and (3) the testimony must be reliable in that it is based on scientific, technical or other specialized knowledge. *See In re Scrap Metal Antitrust Litigation,* 527 F.3d 517, 529 (6th Cir. 2008).

As to the third requirement, the Supreme Court set forth three additional factors to be considered in determining whether to admit expert testimony as reliable: (1) whether the expert's theory has been tested; (2) whether the expert's theory "has been subjected to peer review and publication;" and (3) whether there is a "known or potential rate of error" and "standards controlling" the particular technique and whether it has been generally accepted within the pertinent community. *See Daubert,* 509 U.S. at 593–594, 113 S.Ct. 2786, 125 L.Ed.2d 469; *see also Kumho Tire,* 526 U.S. at 149, 119 S.Ct. 1167, 143 L.Ed.2d 238.

The above factors are neither definitive nor exhaustive, and may or may not be pertinent to the assessment in any particular case. *See Kumho Tire,* 526 U.S. at 141, 119 S.Ct. 1167, 143 L.Ed.2d 238; *see also In re Scrap Metal,* 527 F.3d at 529 (noting that the factors "may be tailored to the facts of a particular case," and "should be applied only where they are reasonable measures of the reliability of expert testimony.") (citations omitted). The trial court has broad latitude to determine whether the factors are reasonable measures of reliability in a particular case. *See Kumho Tire,* 526 U.S. at 153, 119 S.Ct. 1167, 143 L.Ed.2d 238; *see also In re Scrap Metal,* 527 F.3d at 529 (noting the test for reliability is "'flexible,' and the *Daubert* factors do not constitute a definitive checklist or test and may not be dispositive in every case.").

In fulfilling its "gatekeeping" duties the Court must make a determination of proposed experts' qualifications and an assessment of the relevance and reliability of the proffered testimony. *See Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir. 1999); *Clay v. Ford Motor Co.,* 215 F.3d 663, 667 (6th Cir. 2000); *Morales v. American Honda Motor Co., Inc.,* 151 F.3d 500, 516 (6th Cir. 1998); *cf., Kumho Tire Co,* 526 U.S. at 152, 19 S.Ct. 1167, 143 L.Ed.2d 238 (noting abuse of discretion standard applies to the trial court's decision as to whether a hearing is needed to determine reliability of an expert).

Ultimately, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *GE v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Nevertheless, it is important to note that the "rejection of expert testimony is the exception, rather than the rule[.]" *In re Scrap Metal,* 527 F.3d at 530.

### III. DISCUSSION

As discussed, the Court held a *Daubert* hearing in order to address the admissibility of expert testimony. The Court will first address Gonzalez's Motion *in Limine* [184] with respect "Evidentiary Issues Numbers One and Two"—the exclusion of certain testimony from Martinrea's expert witnesses Joseph Cyrek and Mark Robinson. The Court will then address Martinrea's three Motions *in Limine* addressing the exclusion of Gonzalez's proposed experts Clark J. Radcliffe [186], Michael J. Tracy [188], and Lawrence A. Simon [190].

#### A. Gonzalez's Motion [184]

Gonzalez submitted one Motion seeking five different orders *in limine*. *See* Dkt. No. 184. The Court will now address Gonzalez's first two "Evidentiary Issues" covering the scope of Martinrea's expert testimony from Joseph Cyrek and Mark Robinson ("Evidentiary Issues Numbers One and Two") given a stipulation between the parties at the *Daubert* hearing. However, the Court will cover the last three evidentiary issues—the testimony of Martinrea's fact witnesses ("Evidentiary Issue Number Three"), the "law of the case" doctrine ("Evidentiary Issue Number Four"), and the form of witness testimony at trial ("Evidentiary Issue Number Five")—in the forthcoming Opinion and Order.

Prior to the *Daubert* hearing, the parties stipulated to the entry of an order concerning "Evidentiary Issues Numbers One and Two" only. The Court had the parties read the relevant

terms of the stipulation into the record. The parties subsequently sent the following written

stipulation to the Court to clearly express the parameters of the stipulation:

> Martinrea's testifying industry expert, Joseph Cyrek, is prohibited from presenting testimony in the form of legal conclusions at trial, as follows:
>
> 1. Cyrek will not testify regarding whether either party met the contractual milestones, including but not limited to payment milestones, in the Equipment Purchase Agreement.
> 2. Cyrek will not characterize the parties as having entered into a "settlement" or "settlement agreement" of any disputed issues.
> 3. Cyrek will not opine that Martinrea met its contractual obligations under Section 4, "Customer to Supply Items" of Gonzalez's Program Assumptions.
> 4. Cyrek will not opine that Gonzalez breached its responsibilities under the Equipment Purchase Agreement.
> 5. Cyrek will not opine that Martinrea did not breach its responsibilities under the Equipment Purchase Agreement.
> 6. Cyrek will not opine regarding what Michigan contract law does and does not require of contracting parties.
> 7. Cyrek will not opine that Gonzalez and Martinrea's contract was a "fixed price contract."
>
> Martinrea's testifying damages expert, Mark Robinson, is prohibited from presenting testimony in the form of legal conclusions at trial, as follows:
>
> 1. Robinson will not opine that Gonzalez's damages expert Mr. Simon prepared a Report that does not comply with Fed. R. Civ. P. 26.
> 2. Robinson will not characterize the parties as having entered into a "settlement" or "settlement agreement" of any disputed issues.
> 3. Robinson will not testify about his interpretation of the Court's order and his opinion that  the Court ruled Gonzalez is not entitled to recover lost profits damages.
> 4. Robinson will not opine that Gonzalez and Martinrea's contract was a "fixed price contract."
> 5. Robinson will not opine regarding what Michigan contract law does and does not require of contracting parties.
> 6. Robinson will not opine regarding the meaning of contractual provisions.
> 7. Robinson will not opine that Martinrea met its contractual obligations under Section 4, "Customer to Supply Items" of Gonzalez's Program Assumptions.
> 8. Robinson will not opine that Gonzalez breached its responsibilities under the Equipment Purchase Agreement.

9. Robinson will not opine that Martinrea did not breach its responsibilities under the Equipment Purchase Agreement.
10. Robinson will not opine that Gonzalez's claims fail to satisfy the legal standard for a breach of contract or promissory estoppel claim.
11. Robinson will not opine that Martinrea paid Gonzalez more than was contractually required.

Nothing in this Order shall prevent Martinrea's expert witnesses from testifying at trial concerning the facts, circumstances, or the underlying subject matters at issue during the trial, so long as the questions and testimony do not elicit or constitute inadmissible legal conclusions and nothing in this Order alters the language and application of FRE 704 which provides that "an opinion is not objectionable just because it embraces an ultimate issue."   The Court will address any question or testimony to which Gonzalez objects, based on the specific question asked or testimony given at trial.

Having reviewed this stipulation, listened to the parties' stipulation on the record, and the Court being otherwise fully advised in the premises, the Court will resolve Evidentiary Issues Number One and Two by incorporating the stipulation between the parties into this Opinion and Order.

## B.  Martinrea's Motions [186, 188, 190]

The Court will next address Martinrea's three Motions *in Limine* addressing the exclusion of Gonzalez's proposed experts Clark J. Radcliffe [186], Michael J. Tracy [188], and Lawrence A. Simon [190]. These Motions seek broad exclusions of testimony. Prior to conducting its analysis, the Court notes that the Sixth Circuit has stated: "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) ("Normally, motions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses.") (citation omitted); *Land Situated in City of Detroit*, 547 F. Supp. at 681("Any broad pretrial exclusion of evidence . . . must be approached with great caution.").  Furthermore, the Court reiterates that "rejection of expert testimony is the exception, rather than the rule[.]" *In re Scrap Metal,* 527 F.3d at 530.

-7-

**1. The Court will GRANT in part and DENY in part Martinrea's "Motion to Exclude Plaintiff's Proposed Expert Clark J. Radcliffe's Opinion Testimony" [186].**

The first of Martinrea's Motions regarding expert testimony argues that "Mr. Radcliffe should not be permitted to testify as an expert regarding the assembly line design process generally because the assembly line design process generally is not at issue in this case." Dkt. No. 186 at 13. At the *Daubert* hearing, Martinrea did not seem to challenge Professor Radcliffe's qualifications to testify as an expert. For this reason, the Court disagrees that Professor Radcliffe should be precluded from testifying entirely. Instead, at the *Daubert* hearing, Martinrea disputed whether Professor Radcliffe's opinion testimony would be relevant to the case because they felt he was going "a step further" and giving more than a scientific exposition for principles on engineering and assembly lines in general. To this point the Court agrees. Accordingly, the Court will **GRANT** in part and **DENY** in part this Motion *in Limine* [184].

The *Daubert* hearing made it clear that Professor Radcliffe possesses sufficient knowledge and expertise in the design of dynamic and mechanical systems, and has an extensive grasp of the engineering method. Critically, Rule 702 of the Federal Rules of Evidence states that an expert witness may testify if his opinion will help the fact finder understand the evidence or to determine a fact in issue. FED. R. EVID. 702(a). Professor Radcliffe's qualifications and proposed general testimony about engineering design, the engineering process, and construction will be beneficial to the members of the jury so they may understand how assembly lines work and may understand other evidence introduced at trial. It is unlikely that this subject matter will be a familiar topic within the knowledge of the members of the jury. *See Kuhmo Tire Co.*, 526 U.S. at 149 ("[T]he expert's testimony often will rest 'upon an experience confessedly foreign in kind to [the jury's] own.'"). Since Professor Radcliffe's testimony will be helpful in understanding assembly lines and other evidence within the trial; it is relevant, reliable and admissible.

At the hearing, however, it became apparent that Martinrea was not challenging Professor Radcliffe's ability to testify generally to the principles of engineering and assembly lines. Indeed, counsel for Martinrea indicated that they were "fine" with Radcliffe simply testifying to engineering standards in a vacuum. Instead, Martinrea raised concerns that Professor Radcliffe would testify about the general process used by Gonzalez for assembly lines *in addition* to the general process for assembly lines in the industry. Martinrea emphasized that Professor Radcliffe did not verify that Gonzalez, or its subcontractors, followed the process generally used by Gonzalez. Accordingly, Martinrea argues Professor Radcliffe's testimony will confuse the jury because the jury may conflate the general process used by Gonzalez with the standard process used in the industry. The Court agrees.

In its brief, Gonzalez quoted Rule 702's Advisory Committee Notes for the following proposition: "The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts." Dkt. No. 207 at 8 (quoting Fed. R. Evid. 702 Advisory Committee Notes, 1972 Proposed Rules). Gonzalez then stated: "This is exactly what Prof. Radcliffe's testimony will do: provide the jury with the scientific and technical knowledge to understand the disputed facts so that they can apply the scientific principles to the facts." *Id.*

However, Gonzalez did not *exactly* explain what Professor Radcliffe's testimony would entail. When pressed, Gonzalez indicated that Professor Radcliffe would testify that the general process used by Gonzalez is in compliance with the general standards of engineering and design. This is problematic for two reasons. First, after listening to Professor Radcliffe refer to the general process used by Gonzalez and then refer to the standard engineering process, it seemed that he could have been conflating the two processes. Second, Mr. Radcliffe's testimony that he

spoke with individuals who worked for Gonzalez to reach his conclusion gave the impression that the general process used by Gonzalez was actually followed, and in compliance with general engineering standards, on *this* project. After hearing Professor Radcliffe's testimony as a whole, it seemed as though he was drawing a correlation between the two processes, such that the jury may conclude that Gonzalez was actually in compliance on this project, even though Professor Radcliffe did not investigate if Gonzalez actually followed its own process on this project.

While Gonzalez may think that this danger of confusing the jury is minimal, the Court emphasizes that Professor Radcliffe's testimony about the general process used by Gonzalez and his conversations with individuals who worked for Gonzalez is unnecessary. It is not readily clear why Professor Radcliffe needs to speak about the general process used by Gonzalez at all; especially if he is simply educating the jury generally on the engineering method, engineering principles, engineering processes, engineering terminology, and assembly lines. Once he explains these concepts like he did in the *Daubert* hearing, the jury will have full context and be able to better "understand the disputed facts so that they can apply the scientific principles to the facts." Dkt. No. 207 at 8 (referencing FED. R. EVID. 702 Advisory Committee Notes, 1972 Proposed Rules). Testimony about the general process used by Gonzalez and Professor Radcliffe's conversations with Gonzalez personnel only muddies the waters. Thus, it will not be allowed at trial and this Court will **GRANT** in part and **DENY** in part this Motion [186].

### 2. The Court will DENY Martinrea's "Motion to Exclude Plaintiff's Proposed Expert Michael J. Tracy's Opinion Testimony" [188].

Next, Martinrea requests that the Court "enter an Order excluding Mr. Tracy from offering expert opinion testimony at trial[.]"  Dkt. No. 188 at 18. According to Martinrea, Mr. Tracy's proposed opinion testimony should be excluded because it "is not helpful, relevant or reliable." *Id.* at 5. This Court disagrees and will **DENY** this Motion *in Limine* [186].

-10-

As an initial matter, Martinrea's argument that Mr. Tracy's testimony is not relevant fails. Martinrea argues that Mr. Tracy's opinion is not grounded in actual facts because "he doesn't even know what the Contract is or what the parties responsibilities under the Contract or negotiated change orders were." Dkt. No. 188 at 9. However, the fact that Mr. Tracy is not a lawyer and does not understand the legal responsibilities between the lawyers is not a basis to exclude his testimony. To the contrary, Mr. Tracy does not need to understand the legal aspects of the contract in order for his opinions concerning the equipment supplied by Martinrea to be admissible. Mr. Tracy may opine on factual issues; not legal issues. *See Hyland v. HomeServices of Am., Inc.,* 771 F.3d 310, 322 (6th Cir. 2014) (citing *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir. 1994) to note that "a witness may not testify to a legal conclusion."); *Woods v. Lecureux,* 110 F.3d 1215, 1220 (6th Cir. 1997) (citing FED. R. EVID. 702 to state that expert testimony that "attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury.").

Furthermore, contrary to Martinrea's assertions, Mr. Tracy's proposed testimony convincingly appears to show that it will assist the trier of fact in understanding evidence or determining an issue. *See Daubert*, 509 U.S. at 591. Mr. Tracy's report provides a synthesis of complex information regarding the assembly line at issue. His report draws from reports on the Martinrea equipment, *see, e.g.*, Dkt. No. 189-1 at 49-50, third-party material on the types of equipment in question, s*ee id.* at 78, and his professional experience and scientific knowledge, s*ee, e.g., id.* at 42. Moreover, at the *Daubert* hearing, Mr. Tracy explained how he used his unfettered access to documentation within the Gonzalez system to derive five principal areas that lead to technical problems on the line at issue. The average lay juror likely does not have the engineering background such that they would understand the documents examined by Mr. Tracy

-11-

to reach his conclusions. It is hard to imagine that Mr. Tracy's reduction of this complex information into a concise five-factor assessment would not assist an average juror in understanding the workings of a complex and obscure assembly line system. *See id.* at 24-26 (explaining the five-factor assessment which was based of sixteen "detailed opinions").

Nevertheless, Martinrea says that Mr. Tracy's testimony should be excluded because his opinions are "not beyond the 'ken of lay jurors' to comprehend themselves." Dkt. No. 188 at 13. The Court strongly disagrees with this contention. According to Martinrea, Mr. Tracy's opinions do not provide uncommon knowledge because "a jury is more than capable of examining documents admitted into evidence and developing their own opinions." Dkt. No. 188 at 14. This assertion misrepresents the requirements of Rule 702.  As set out by the Advisory Committee Notes to Rule 702 of the Federal Rules of Evidence, the question is whether, absent the expert testimony, an average jury would be able to "determine *intelligently* and *to the best possible degree* the particular issue." FED. R. EVID. 702, Advisory Committee Notes (emphases added). The Court must consider whether the jurors could arrive at an informed conclusion on their own; without scientific or specialized knowledge. The Court does not, as Defendants suggest, simply consider whether a jury would be capable of coming to any opinion at all. *See* Dkt. No. 188 at 17 (citing *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1367 (S.D. Fla. 2009).

Martinrea's argument downplays the fundamental benefit of expert testimony—to assist a jury in coming to an informed conclusion where they might otherwise come to an ignorant one. Mr. Tracy's proposed testimony seems sufficient pursuant to Rule 702. The Sixth Circuit set out two categories of sufficiently uncommon knowledge: (1) knowledge grounded in scientific principles of which the average juror would not be aware—for example, an aeronautical engineer assessing how a bumblebee would be able to fly—and (2) knowledge grounded in repeated first-

hand observations not available to the average juror—for example, a beekeeper recognizing that bumblebees always take off into the wind. *See Berry v. City of Detroit*, 25 F.3d 1342, 1349-50 (6th Cir. 1994). Each of the five factors in Mr. Tracy's "Opinion Summary" appears to incorporate one or both of these principles.

For example, regarding factor one ("Robot Condition"), Mr. Tracy asserts that "a robot that is slowed by 10% is likely to add 2 to 3 seconds to cycle time." Dkt. No. 189-1 at 24. The average juror would not be aware of this obscure causal relationship. Another example of such assertions can be seen in regard to factor five ("[Martinrea] Compressed Air System"). For factor five Mr. Tracy notes that Martinrea's addition of pneumatic pressure sensors to weld guns was "not common in welding systems . . . and required additional communications time." *Id*. at 26. Again, the average juror would not be aware of this information.

Martinrea also takes the position that Mr. Tracy's testimony is not sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *See Daubert*, 509 U.S. at 591, 113 S.Ct. 2786, 125 L.Ed.2d 469 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)). Given that Mr. Tracy's proposed testimony deals entirely with the functioning of the equipment used for this job, and the possibility that the equipment contributed to the failure of the assembly line at issue, the Court finds that the proposed opinion testimony is sufficiently tied to the relevant facts to assist the jury in resolving the central issue in this case.

Mr. Tracy's assertions are the product of repeated first-hand observations given his experience in the industry. His proposed testimony contains conclusions that are the product of assessing and synthesizing a wide-range of information relating to assembly-line robotics and equipment standards, including his own experiences working in the field. There is a foundational connection between Mr. Tracy's extensive past experience with automotive assembly-line

projects and the information provided. *Id*. at 68-76. Put simply, Mr. Tracy's proposed testimony will assist the jury, is tied to the facts of the case, and is relevant.

Aside from arguing that Mr. Tracy's testimony is not relevant, however, Martinrea also argues that Mr. Tracy's opinions are not reliable because the testimony (1) is "based on the unsupported, self-serving conclusions of Gonzalez and not an independent evaluation of all available facts," (2) consists of conclusory opinions that fail to address any contrary evidence, and (3) is merely a "regurgitation" of information provided by a Gonzalez memorandum. The Court finds that these concerns are overstated and better suited for cross-examination.

For example, Martinrea argues that Mr. Tracy's opinions lack good grounds because he didn't "even address evidence contrary to his opinions and offered no analysis or explanation" in Martinrea's view for "why his opinions are contradictory to certain record evidence." Dkt. No. 188 at 10. However, Mr. Tracy asserted on the stand that he reviewed the depositions of several Martinrea witnesses, who espoused contradictory evidence and information, before he deemed them unreliable to reach his own conclusion. *Cf*. Dkt. No. 189-1 at 80. For each of the opinions provided in his report, Mr. Tracy provides a list of sources on which the opinions were founded. These sources include, in addition to the Martinrea depositions, product specifications for the equipment in question as well as third-party materials regarding assembly-line operations. Thus, the method utilized by Mr. Tracy was not "simply review[ing] documents, interview[ing] Gonzalez personnel and develop[ing] opinions in a vacuum without considering or validating those opinions against the totality of what is known." Dkt. No. 188 at 14. The breadth of information incorporated into Mr. Tracy's assessment and explained at the *Daubert* hearing provides sufficiently good grounds for admissibility.[1]

---

[1] Moreover, there appears to be no strict requirements in the Sixth Circuit that an expert must assess contrary evidence in order for their testimony to be based on good grounds. If anything, the Sixth Circuit and this Court have

Martinrea also argues that Mr. Tracy's opinion is merely his own *ipse dixit* without sufficient testing and methodology. Dkt. No. 188 at 11. Particularly, Martinrea argues that Mr. Tracy merely "regurgitates" opinions provided by Gonzalez and did not "actually examin[e]" the equipment provided by Martinrea. *Id.* at 16. However, expert witnesses generally do not provide factual accounts of the contested issues, and they are permitted to comment on the evidence that others supply. FED. R. EVID. 703. Expert witnesses are allowed to testify based on information furnished by others because they have technical expertise in a given field that "will help the trier of fact to understand the evidence." FED. R. EVID. 702(a). The key is making sure Mr. Tracy's testimony is not a mouthpiece of Gonzalez—"a party's lawyer's avatar"—because he would then "contribute[] nothing useful to the decisional process." *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 941 (E.D. Mich. 2014).

At the *Daubert* hearing, Mr. Tracy emphasized that he developed his conclusions independently. He emphasized that he did not physically inspect the line at issue because it had been modified and it would be counterproductive to compare the line in its current state since the line was not in that state during the time in dispute. Martinrea's concerns all go to the weight of the testimony rather than its admissibility. Such concerns can be addressed through vigorous cross-examination. *See United States v. Freeman*, No. 06-20185, 2015 WL 2062754, at *5 (E.D. Mich. May 4, 2015); *see also*, *United States v. Allums,* No. 2:08–CR–30 TS, 2009 WL 806748, at *2 (D. Utah Mar.24, 2009) ("[T]hese arguments, and others that might cast doubt on [Agent's] conclusions in this specific case, are legitimate questions that would be appropriately raised on cross-examination of [Agent], at trial.") (brackets and alterations in original).

---

a low threshold for factual sufficiency in admitting expert testimony. *See, e.g.*, *Pretzer v. Otto Bock Healthcare LP*, No. CIV. 09-11894-BC, 2010 WL 726953, at *8 (E.D. Mich. Feb. 24, 2010) (citing *U.S. v. L.E. Cooke Co.*, 991 F. 2d 336, 342 (6th Cir. 1993), which states that "any weaknesses in the factual basis of an expert witness' opinion, including unfamiliarity with standards, bear on the weight of the evidence rather than on its admissibility").

In sum, Mr. Tracy's report incorporates facts of the case as provided through discovery documents, technical specifications of the equipment in question, third-party information regarding the operation of the assembly line at issue, and his own technical knowledge and experience. Mr. Tracy relies on reports and documentation from both parties regarding the functioning of the equipment. Notably, both parties will be calling industry experts. Just because Martinrea disagrees with Gonzalez's framing of the facts, it does not mean that this Court should exclude *all* of Gonzalez's testimony. *See* FED. R. EVID. 702 Advisory Committee Notes, 2000 amends. ("When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249–50 (5th Cir.2002) (holding that jury was entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which expert relied were accurate).

"[R]ejection of expert testimony is the exception, rather than the rule," and the Court has the discretion to "permit testimony based on allegedly erroneous facts when there is some support for those facts in the record." *In re Scrap Metal*, 527 F.3d at 530. Given Mr. Tracy's extensive expertise working with such robots and machines, and his explanation in the *Daubert* hearing of his principles and methods and how they are tied to the facts of this case, the Court finds that his opinion would help the jury understand the evidence. The concerns expressed by Martinrea would best be served not by exclusion, but by "vigorous cross-examination,

-16-

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Conrail v. Grand Trunk W. R.R. Co.*, 963 F. Supp.2d 722, 733 (citation omitted); *see also* FED. R. EVID. 702 Advisory Committee Notes, 2000 amends. (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996) for the proposition that "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."). Accordingly, the Court will simply **DENY** this Motion [188].

### 3. The Court will GRANT in part and DENY in part Martinrea's "Motion to Exclude Plaintiff's Proposed Expert Lawrence A. Simon's Opinion Testimony" [190].

Lastly, "Martinrea requests that Mr. Simon's report and opinions be excluded under [Rule 702 of the Federal Rules of Evidence]." Dkt. No. 190 at 30. Martinrea breaks its argument up into four parts tracking the Expert Report of Mr. Simon. The Court will accept the damages in Parts I and II of the report, reject the damages in Parts III and IV, and **GRANT** in Part and **DENY** in part Martinrea's final Motion *in Limine* [188] regarding the testimony of Mr. Simon.

#### a. Part I of Mr. Simon's Report will be allowed with a qualification.

Martinrea first argues that Part I of Mr. Simon's report "does not employ any helpful specialized knowledge or expertise. Instead, Mr. Simon merely presents simple addition and subtraction to arrive at the amount not paid under the contract and negotiated change orders." Dkt. No. 190 at 8. The Court disagrees. As Gonzalez points out, "Martinrea ignores a key point: Mr. Simon had to review and analyze complex accounting records . . . in order to determine what to add and subtract." Dkt. No. 212 at 14. Martinrea oversimplifies the work done by Mr. Simon because the findings of Mr. Simon would not be within the capabilities of the average juror.

Although Mr. Simon's final formula does consist of adding up values, the *Daubert* hearing made it clear that these values were derived by conducting detailed interviews, assessing

a string of invoices in comparison with the original payment terms of the Agreement, and assessing a series of purchase orders and engineering change orders. *Cf.* Dkt. No. 213-1 at 16. To reach an intelligent conclusion on this issue requires a close familiarity with accounting principles, at the very least. The average juror presumably does not possess this familiarity. Indeed, the "simple arithmetic" described by Martinrea actually makes it easier for the average jury to reach its conclusion. This was exemplified by Martinrea's counsel simply relying on the numbers derived *as a result* of Mr. Simon's work in order to argue that his work should be excluded. This is disingenuous; this opinion by Mr. Simon will assist the trier of fact.

Next, Martinrea argues "Mr. Simon's Report must be excluded because his damage methodology incorrectly assumes that the jury can award the exact same damages for breach of contract and promissory estoppel." Dkt. No. 190 at 9. The crux of Martinrea's argument is that the promissory estoppel damages figure is unreliable because the claim is based on an email from October of 2011, which allegedly promised payment for out-of-scope work. *See* Dkt. No. 190 at 11. According to Martinrea, "the so-called extra costs claim . . . captures costs starting with March of 2011, when the alleged promise to pay for out-of-scope work was not made until October of 2011." *Id.* However, as pointed out in Gonzalez's Response, the email in question states that Defendants would cover out-of-scope work "in accordance with our position since the start of this project." Dkt. No. 100-30 at 2. Thus, Gonzalez is correct in its assertion that Martinrea's promise to Gonzalez, inducing performance outside of the agreed contract scope, occurred not on October 30, 2011, but at the start of the project.

However, the Court will not just accept Mr. Simon's report because, as Martinrea explains, Mr. Simon "does not distinguish or separate [the] mutually exclusive sets of alleged damages." Dkt. No. 190 at 10. Indeed, Mr. Simon indicated that he believed that the damages are

"all recoverable under both the breach of contract and promissory estoppel." Dkt. No. 192-1 at 7-8. Moreover, Mr. Simon's report labels the "Summary of Total Damages" as "Breach of the Equipment Purchase Agreement and Promissory Estoppel." *See* Dkt. No. 195-1 at 9.

Such admissions from Mr. Simon are troubling, but they do not lead the Court to Martinrea's ultimate conclusion that Mr. Simon's conclusion of identical awards under alternative claims makes "his *entire* report . . . speculative, unhelpful, and inadmissible[.]" Dkt. No. 190 at 10 (emphasis added). As Gonzalez points out, Mr. Simon is not a lawyer and his testimony should not be excluded in full because he does not understand the difference between breach of contract and promissory estoppel claims. *See* Dkt. No. 212 at 13. More critically, the fact that he does not understand the difference between promissory estoppel and breach of contract does not automatically render his methodology as flawed, speculative, unhelpful, and inadmissible as Martinrea asserts. *See* Dkt. No. 190 at 11 (citing *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005)).

Mr. Simon's report does "consider relevant factors in its damages analysis," and does "link . . . instance[s] of misconduct to a specific amount of damages." *Id.* The problem is that Mr. Simon simply conflates the damages together. Dkt. No. 195-1 at 9. Gonzalez acknowledges that "it cannot recover the same damages under *both* legal theories[.]" Dkt. No. 212 at 11. As such, this Court will separate the improperly labeled damages for the parties and explain what Mr. Simon may and may not testify to with respect to damages. *See infra*, Part IV, pp. 26-27.

### b. Part II of Mr. Simon's Report will be allowed.

Next, Martinrea attacks Mr. Simon's report by noting that "Mr. Simon's unprecedented 'costs plus profit' methodology and his resulting opinions are entirely speculative and will not help the jury in identifying any 'additional expenses' for purposes of any theoretically

recoverable damage awards." Dkt. No. 190 at 12. Martinrea takes a "whack-a-mole" approach in attempting to eliminate Mr. Simon's testimony by labeling his methodology as the "cost plus profit" methodology, a "total cost" methodology, and a "lost profits damage claim, at best." By the time of the *Daubert* hearing, Martinrea only labeled the methodology as a "total cost" methodology that must be excluded. The Court disagrees.

Gonzalez asserts that "Mr. Simon did not actually use the total cost methodology." Dkt. No. 227 at 11. Instead, Gonzalez argues that it has "maintained extensive financial documentation, produced those documents to Martinrea, and is able to prove its damages." Dkt. No. 227 at 12. The crux of the dispute seems to be that Martinrea is trying to force the total cost methodology on Gonzalez, arguing that Mr. Simon's damages model simply "totaled up ***all*** costs, added a profit, and subtracted some of the payments made." Dkt. No. 190 at 12 (emphasis in original). Martinrea also argues that Mr. Simon's opinion is speculative because it includes "undisputed costs for which Gonzalez was responsible, not Martinrea, yet Mr. Simon includes them in his damages theory." Dkt. No. 219 at 7.

Gonzalez strongly emphasizes that "the costs incurred on the Martinrea job as identified by Mr. Simon are all 'actual cost' taken from the company books and records – these amounts are not estimates or projections." Dkt. No. 212 at 16. Moreover, Gonzalez firmly pushes back on Martinrea's contention that Mr. Simon's damages model includes expenses for which Gonzalez was responsible. Dkt. No. 227 at 13. Instead, Gonzalez contends that Martinrea disregards work done by Mr. Simon, and is simply "mixing up financial accounting concepts." *Id.*

Gonzalez argues that Mr. Simon actually only conducted a "reconciliation"—a sampling methodology—in accordance with standard procedure for accountants conducting audits of corporate books and records. *Id.*; *see also* Dkt. No. 212 at 17-18 (citing deposition testimony

where Mr. Simon explains he conducted his sampling pursuant to AICPA rules by controlling for any potential inaccuracy through a total reconciliation process). In so doing, Gonzalez asserts that "rather than inspect each and every one of the 3,000-4,000 separate invoices that were summarized into Gonzalez's standard accounting records and financial reports, Mr. Simon utilized a typical CPA tool whereby he examined a substantial portion of the universe of such invoices to ensure the accuracy of the amounts shown in the company's financial statements." Dkt. No. 227 at 14. As a result, Gonzalez argues that Mr. Simon "found that over 90 percent of the costs incurred by Gonzalez on the Martinrea job were additional costs <u>necessitated by Martinrea's failure</u>." *Id.* (citations omitted) (emphasis in original).

Martinrea ridicules and disagrees with Mr. Simon's reconciliation process. *See* Dkt. No. 190 at 17-18; Dkt. No. 219 at 7. Rather than acknowledging the reconciliation process, Martinrea argues that "Mr. Simon simply chose to ignore [] records." Dkt. No. 219 at 6. In fact, Martinrea does not believe this reconciliation took place, though Mr. Simon and Martinrea assert they are contained in the Doeren Mayhew supporting work papers. Mr. Simon brought his voluminous work papers to the *Daubert* hearing and explained how he used accounting principles to go through thousands of invoices, accounting records, and other financial and corporate documents of Gonzalez to reach his conclusion. Martinrea's criticism simply goes to the credibility of the testimony as opposed to the reliability because the criticism does not challenge the underlying methods of the reconciliation process used by Mr. Simon. The criticism simply attacks the results. Such concerns are best be served not by exclusion, but by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof[.]" *Conrail v. Grand Trunk W. R.R. Co.*, 963 F. Supp.2d 722, 733 (citation omitted).

Lastly, Martinrea argues that the Court should exclude the "lost-profits" "mark-up" damages of $907,476 in Mr. Simon's report.  The Court will not deny the lost profit calculation because "[u]nder Michigan law . . . damages calculations with a 'reasonable basis of computation' [are sufficient] even though the results are 'only approximate,' *Waskin Dev. Co. v. Weyn,* 369 Mich. 121, 119 N.W.2d 662, 665 (1963), and 'speculative to some degree,' *Lorenz Supply Co. v. Am. Standard, Inc.,* 100 Mich. App. 600, 300 N.W.2d 335, 340 (1980)." *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 650-51 (6th Cir. 2009).

Here, Mr. Simon provided a reasoned, non-speculative basis for projecting the profits that were lost in this case. Mr. Simon explained to the Court that he arrived at this figure because the normal practice for Gonzalez was to mark-up anything they billed. Accordingly, he claims that he took the original cost of the contract and then figured out the margin that Gonzalez would have received on the project had the contract been completed—the intention of Gonzalez when they billed the contract.  Accordingly, the Court will permit these damages. *See Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 651 (6th Cir. 2009) (allowing lost-profits award and saying the award was not unduly speculative because Mr. "Simon had a reasoned, non-speculative basis for projecting profits" in that case); *Joerger v. Gordon Food Serv., Inc.*, 224 Mich. App. 167, 174, 568 N.W.2d 365, 369 (1997) ("Damages awarded in promissory estoppel actions may include an award of lost profits, and out-of-pocket expenses incurred in preparation for performance or in the performing of the work that was induced by the promisor[.]") (internal citations omitted). As such, the Court will permit the damages in Part II.

### c.  Parts III and IV will be precluded.

Lastly, Martinrea contends that Parts III and IV of Mr. Simon's report "must be stricken as unhelpful and speculative because the damage model assumes that the jury can award at trial

*any amount at all* for the 'lost use' of funds, when . . . no one did or could have contemplated them at the time the parties executed their agreement." Dkt. No. 190 at 25 (emphasis in original). Ultimately, the Court agrees with Martinrea on this point.

Martinrea contends that "the jury cannot award these types of damages because they are not recoverable under Michigan law." Dkt. No. 190 at 25. "[U]nder Michigan law interest may be awarded to compensate an aggrieved party for the lost use of money." *R.D. Mgmt. Corp. v. Philadelphia Indem. Ins.*, 302 F. Supp. 2d 728, 732 (E.D. Mich. 2004); *see also id.* at 732-33 (quoting *Gordon Sel–Way, Inc. v. Spence Bros., Inc.,* 438 Mich. 488, 399, 475 N.W.2d 704, 710 (1991) to note that "Michigan law recognizes the notion that common-law interest may be awarded to a claimant as 'a legitimate element of damages used to compensate the prevailing party for the lost use of its funds.'"). *But cf. Manley, Bennett, and McDonald & Co. v. St. Paul Fire & Marine Ins. Co.,* 821 F.Supp. 1225 (E.D. Mich. 1993) (awarding pre-filing interest because "[w]ithout adequate interest, plaintiff cannot be made whole, and defendant would be unjustly enriched."); *John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 185 F. Supp. 2d 771, 780 (E.D. Mich. 2002) (quoting *Gordon Sel–Way, Inc.,* 438 Mich. at 499, 475 N.W.2d 704 to note that "the pivotal factor in awarding [pre-filing] interest is whether it is necessary to allow full compensation.") *aff'd,* 346 F.3d 727 (6th Cir. 2003).[2] This Court is hesitant to permit over $8 million in consequential damages for the lost-use of funds when pre-filing interest is generally the element of damages to compensate for the lost use of funds. *See*, *e.g.*, *Jones v. Jackson Nat.*

---

[2] Martinrea places a heavy emphasis on *Firwood Mfg. Co., Inc. v. General Tire, Inc.*, 96 F.3d 163 (6th Cir. 1996), arguing that "the Sixth Circuit held that so-called liquidity damages concerning 'the lost use of money' caused by breach of contract are never recoverable by a Seller, *under the UCC*[.]" Dkt. No. 190 at 27 (emphasis added). However, as mentioned in this Court's Summary Judgment Order, this case would not fall under the Uniform Commercial Code because the parties essentially provided services—robots and equipment—to each other, but did not sell any goods. *See* Dkt. No. 118 at 13 n.3 (citing *Wells v. 10-X Mfg. Co*., 609 F.2d 248, 254 (6th Cir. 1979) for the following proposition: "[T]he fact that the party supplying a service does so in conjunction with the delivery of goods does not necessarily mean that the transaction comes within the [Uniform Commercial] Code. . . . Irrespective of the fact that performance under the terms of the contract would have resulted in the special manufacture of goods, the contract was one for the rendition of services.").

*Life Ins. Co.*, 819 F. Supp. 1382, 1383 (W.D. Mich. 1993) (noting that the purpose of the common law interest as an element of damages is "to provide full compensation.").

This is particularly so when Martinrea argues that "[e]ven if such damages were theoretically recoverable . . . Mr. Simon admitted that no one did or could have contemplated the so-called 'liquidity issues' at the time the parties entered into their contract in October of 2010." Dkt. No. 190 at 27 (citation omitted). Essentially, Martinrea asserts that the consequential damages in these sections are not foreseeable. Indeed, it is important to note that "[u]nder Michigan law, the damages recoverable for a breach of contract 'are those damages that arise naturally from the breach or which can *reasonably* be said to have been in contemplation of the parties at the time the contract was made.'" *Lawrence v. Will Darrah & Assoc., Inc.,* 445 Mich. 1, 13, 516 N.W.2d 43 (1994) (emphasis in original) (citation omitted). Thus, Gonzalez's argument falls apart because it argues that these damages were both foreseeable and reasonable.

The argument that these damages were foreseeable is tenuous, and the notion that these damages were reasonably in contemplation at the time the contract was made is simply unavailing. The problem with Gonzalez's position is encapsulated in the following position that it takes: "Gonzalez is merely seeking (entirely foreseeable) damages stemming from over $6.5 million in unpaid costs sufficient to bring it to the position it would have been in but-for Martinrea's conduct." Dkt. No. 212 at 21 n.3. However, the *reasonable* damages "but for" Martinrea's conduct are the $6.5 million dollars in unpaid costs; not an additional $8 million in damages *stemming* from the unpaid costs.

Gonzalez tries to explain that the "liquidity damages" were reasonable and foreseeable because they "began during the parties' relationship," Dkt. No. 212 at 22, but this is unpersuasive. *See Globe Ref. Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544, 23 S. Ct. 754, 47

L. Ed. 1171 (1903) ("The suggestion . . . that perhaps notice after the contract was made and before breach would be enough, is not accepted[.]") (citations omitted); *Contempo Metal Furniture Co. of California v. E. Texas Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981) ("Because the carrier is taking a risk that events appreciably beyond its control may prevent it from performing the contract, the carrier is entitled to notice of any unforeseeable consequences of nonperformance so that the carrier can protect itself. Notice after the contract is made does not afford opportunity for this self-protection.") (internal citations omitted).

The Court simply finds that Martinrea cannot be held liable for the consequential damages Gonzalez seeks. Instead, the damages for lost use of funds will be limited to the prejudgment interest for both the breach of contract and promissory estoppel claims. *See*, *e.g.*, *Jones v. Jackson Nat. Life Ins. Co.*, 819 F. Supp. 1382, 1383 (W.D. Mich. 1993) (citing Michigan case law to state that "Michigan courts have included interest as an element of damages as a matter of right where the amount claimed is liquidated[,]" and noting that where the principal amount in controversy for the breach of contract has been set by contract from the outset, interest is generally allowed from the date when the claim accrued or, in other words, "from the date compensation would have been due had it been paid voluntarily." ); *W. v. AK Steel Corp. Ret. Accumulation Pension Plan*, No. 1:02-CV-0001, 2005 WL 3465637, at *7 (S.D. Ohio Dec. 19, 2005) (citing *Rybarczyk v. TRW, Inc.,* 235 F.3d 975, 985 (6th Cir. 2000) to state that "[i]t is well-settled that the court may award prejudgment interest in its discretion, and in accordance with general equitable principles" and to note that prejudgment interest "is not awarded for punitive purposes, but to compensate for the lost time value of money."), *aff'd sub nom. W. v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007). Thus, the Court will preclude testimony about Parts III and IV, and **GRANT** in part and **DENY** in part this final Motion *in Limine* [190].

## IV. CONCLUSION

These are the rulings of the Court. The Court emphasizes, however, that "[a] ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court . . . the district court may change its ruling at trial for whatever reason it deems appropriate," and "where sufficient facts have developed to warrant the change." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce,* 713 F.2d 1236, 1239 (6th Cir. 1983) *aff'd,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

That being said, for the reasons discussed above, the Court **HEREBY RESOLVES** Evidentiary Issues Number One and Two in Gonzalez's Motion *in Limine* [184] by incorporating the stipulation between the parties that is included in this Opinion and Order.

Additionally, the Court **GRANTS** in part and **DENIES** in part Martinrea's Motion to Exclude Plaintiff's Proposed Expert Clark J. Radcliffe's Opinion Testimony [186]. Professor Radcliffe will be able to testify generally about the engineering method, engineering principles, engineering processes, engineering terminology, and assembly lines. However, testimony about the process generally used by Gonzalez and testimony that Professor Radcliffe spoke to Gonzalez personnel about the process used by Gonzalez will not be allowed at trial.

The Court also **GRANTS** in part and **DENIES** in part Martinrea's Motion to Exclude Plaintiff's Proposed Expert Lawrence A. Simon's Opinion Testimony [190]. The Court will permit Mr. Simon to testify regarding the damages in Parts I and II of his report **with the qualification that he not conflate the damages**. The Court will preclude Mr. Simon from testifying regarding Parts III and IV of his report because prejudgment interest is the proper form of damages as a matter of law. Therefore, this Court will permit testimony from Mr. Simon so long as all exhibits and testimony reflect the following presumptions of a jury award:

(1)     In the case that the jury finds Martinrea completely breached its contract, Gonzalez will be entitled to (i) the "Recovery of Unpaid Invoices and Unbilled Contract" section of Mr. Simon's report for the unpaid invoices (expectation damages), (ii) the "Recovery of Additional Project Costs – After Free Issue Equipment" section of Mr. Simon's report for not supplying properly functioning equipment per the terms of the agreement (consequential damages), and (iii) prejudgment interest as a matter of law.

(2)     In the case that the jury finds Martinrea did not breach its contract, the jury would have to determine whether the elements of promissory estoppel have been met. If the jury determines that the elements of promissory estoppel have been met, then Gonzalez would be entitled in the alternative to (i) the "Recovery of Additional Project Costs – After Free Issue Equipment" section of Mr. Simon's report for the alleged promise by Martinrea that they would continue providing any additional costs incurred by Gonzalez outside of the scope of the contract (reliance damages), and (ii) prejudgment interest as a matter of law.

For visual reference, the breakdown of damages, based on Mr. Simon's findings and use of reliable accounting principles, would be as follows:

| Breach of Contract | Promissory Estoppel |
|---|---|
| "Recovery of Unpaid Invoices and Unbilled Contract" $1,065,928 | "Recovery of Additional Project Costs – After Free Issue Equipment" $6,509,296 |
| "Recovery of Additional Project Costs – After Free Issue Equipment" $6,509,296 | |
| "Total Damages" $7,575,224 + Prejudgment Interest | "Total Damages" $6,509,296 + Prejudgment Interest |

Lastly, the Court **DENIES** Martinrea's Motion to Exclude Plaintiff's Proposed Expert Michael J. Tracy's Opinion Testimony [188].

IT IS SO ORDERED.

Dated: August 13, 2015

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge