UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GONZALEZ PRODUCTION SYSTEMS, INC.,

      Plaintiff/Counter-Defendant,

v.

        Case No. 13-cv-11544

MARTINREA INTERNATIONAL INC.,

      Defendant,

MARTINREA HEAVY STAMPINGS INC.,

      Defendant/Counter-Plaintiff.

        UNITED STATES DISTRICT COURT JUDGE
        GERSHWIN A. DRAIN

        UNITED STATES MAGISTRATE JUDGE
        R. STEVEN WHALEN

_____/

**OPINION AND ORDER GRANTING MARTINREA'S MOTION *IN LIMINE* [180]; GRANTING IN PART AND DENYING IN PART MARTINREA'S MOTIONS *IN LIMINE* [168, 174, 179]; DENYING MARTINREA'S MOTIONS *IN LIMINE* [170, 181, 182]; AND DENYING IN PART GONZALEZ'S MOTION *IN LIMINE* [184]**

## I. INTRODUCTION

Gonzalez Production Systems, Inc. ("Gonzalez" or "Plaintiff/Counter-Defendant"), commenced this action on April 4, 2013 against Martinrea International Inc. ("Martinrea International" or "Defendant"). *See* Dkt. No. 1. On May 17, 2013, Gonzalez filed an Amended Complaint adding Martinrea Heavy Stampings, Inc. ("Martinrea Stampings" or "Defendant/Counter-Plaintiff") as an additional Defendant in this dispute. *See* Dkt. No. 8. In the Amended Complaint, Gonzalez contends that both Martinrea International and Martinrea Stampings (collectively "Martinrea" or "Defendants") are liable for breach of contract, or, in the alternative, liable in equity under the theory of promissory estoppel. *Id.*

On June 17, 2013, Martinrea Stampings filed a counterclaim against Gonzalez for breach of contract. *See* Dkt. No. 201. On November 17, 2014, this Court entered an Order Denying

Martinrea's Motion for Summary Judgment and Granting Gonzalez's Motion for Summary Judgment. *See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-cv-11544, 2014 WL 6455592, at *1 (E.D. Mich. Nov. 17, 2014). On January 26, 2015, less than a month before trial was originally set to begin, and after a contentious dispute regarding the admissibility of the parties' expert reports, this Court amended the scheduling order and postponed the trial to quell concerns about prejudice to the parties. *See* Dkt. No. 155 (moving trial to August 11, 2015); *see also* Dkt. No. 161 (moving trial to September 22, 2015 at the request of the parties).

Martinrea has now filed ten Motions *in Limine* in preparation for trial [168, 170, 174, 180, 181, 182, 186, 188, 190] covering several evidentiary issues, while Gonzalez filed one Motion *in Limine* [184] covering five distinct evidentiary issues. The Motions are fully briefed. The Court held a *Daubert* hearing on August 10, 2015 and resolved the Motions with respect to expert testimony [184, 186, 188, 190] in an Opinion and Order dated August 13, 2015. After reviewing and considering the parties Motions and supporting briefs, the parties' responses thereto, and the entire record of this matter; the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented, and oral argument would not aid the decisional process for the remaining Motions *in Limine*.

Therefore, the Court will resolve Martinrea's remaining Motions *in Limine* [168, 170, 174, 179, 180, 181, 182] and the remaining "Evidentiary Issues" in Gonzalez's Motion *in Limine* [184] "on the briefs." *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons discussed herein, the Court will **GRANT** Martinrea's Motion *in Limine* [180]; **GRANT** in part and **DENY** in part Martinrea's Motions *in Limine* [168, 174, 179]; **DENY** Martinrea's Motions *in Limine* [170, 181, 182]; and **DENY** "Evidentiary Issues Numbers Three, Four and Five" of Gonzalez's Motion *in Limine* [184]. The Court's Opinion and Order is set forth in detail below.

## II. LEGAL STANDARD

Under appropriate circumstances, motions *in limine* may be used to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *See Luce v. United States,* 469 U.S. 38, 40 n. 2, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). The use of motions *in limine* "by the trial court is purely discretionary and generally confined to very specific evidentiary issues of an extremely prejudicial nature." *United States v. Certain Land Situated in City of Detroit, Wayne Cnty., State of Mich.*, 547 F. Supp. 680, 681 (E.D. Mich. 1982) (citing Wright & Graham, Federal Practice and Procedure: Evidence, P 5037).

Judge David M. Lawson of this district has noted that motions *in limine* serve the following purposes prior to the commencement of trial:

> [Motions *in Limine*] (i) facilitate trial preparation by providing information pertinent to strategic decisions; (ii) reduce distractions during trial and provide for a smoother presentation of evidence to the jury; (iii) enhance the possibility of settlement of disputes without trial; (iv) provide some additional insulation of the jury from prejudicial inadmissible evidence; and (v) improve the conditions under which the trial judge must address evidence issues by reducing the need for hasty decisions during the heat of trial.

*Figgins v. Advance Am. Cash Advance Centers of Michigan, Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) (quoting Report of Kentucky Study Committee, 1989, p. 5, quoted in Lawson, *The Kentucky Evidence Law Handbook,* pp. 33–34 (3d ed. 1993)); *see also Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (stating that a purpose of motions *in limine* is to avoid the futile attempt of "unring[ing] the bell" when jurors have seen or heard inadmissible evidence, even when stricken from the record) (citation omitted); *U.S. v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002) (noting that motions *in limine* serve to streamline trials by settling evidentiary disputes in advance and by minimizing side-bar conferences and other disruptions at trial) (citation omitted); *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1069 (3d Cir.1990)

(stating that an *in limine* motion "is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.") (citation omitted).

Nevertheless, "one practical difficulty in ruling on such motions is the absence of context that comes when the challenged evidence is presented with the other proofs at trial." *Figgins*, 482 F. Supp. 2d at 865. Indeed, the Sixth Circuit has stated that "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co.*, 264 F.R.D. 266, 274 (E.D. Mich. 2009) ("Normally, motions *in limine* are not proper procedural devices for the wholesale disposition of theories or defenses.") (citation omitted); *Land Situated in City of Detroit*, 547 F. Supp. at 681("Any broad pretrial exclusion of evidence . . . must be approached with great caution.").

Accordingly, "[i]t may be desirable in many cases to defer ruling on objections until trial[.]" *Figgins*, 482 F. Supp. 2d at 865. Nonetheless, "[i]t may also be appropriate for the Court to consider an *in limine* motion when it is more efficient to rule prior to trial and the pre-trial motion facilitates more thorough briefing than would likely be available during the course of trial." *Frintner v. TruePosition*, 892 F. Supp. 2d 699, 707 (E.D. Pa. 2012) (citing *In re Japanese Electronic Products antitrust Litigation*, 723 F.2d, 260 (3d. Cir. 1983) *rev'd on other grounds by Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). The determination is ultimately left to the Court's discretion. *See Land Situated in City of Detroit*, 547 F. Supp. at 681.

### III. DISCUSSION

Martinrea has the following seven Motions *in Limine* remaining in preparation for trial: (1) to Exclude Reference to Allegations of Injury or Death Purportedly Caused by Robots [168]; (2) to Exclude Gonzalez's Improper Lay Opinion Testimony Concerning Robots and Their Functionality [170]; (3) to Exclude Lay Witness Testimony Regarding Gonzalez's Alleged Damages [174]; (4) to Exclude References to any Alleged Corporate Greed, Callousness, Financial Resources or any So-Called "Deep Pockets" Arguments [179]; (5) to Exclude References to the Court's Summary Judgment Order and Other Pretrial Hearings and Papers [180]; (6) to Preclude Contradiction or Rebuttal of Martinrea's Expert Witness Reports [181]; and (7) to Enforce this Court's Order Concerning "Cycle Time Observations" and "Robot Inspection, Maintenance, Repair or Replacement" Records [182]. Gonzalez filed one Motion *in Limine* [184], but has three separate "Evidentiary Issues" remaining: the testimony of Martinrea's fact witnesses ("Evidentiary Issue Number Three"), the "law of the case" doctrine ("Evidentiary Issue Number Four"), and the form of witness testimony at trial ("Evidentiary Issue Number Five").  A discussion of the parties' Motions is below.

### A. MARTINREA'S MOTIONS

Although Martinrea filed ten Motions *in Limine*, the Court already addressed three of the Motions covering the testimony of proposed experts Clark J. Radcliff [186], Michael J. Tracy [188], and Lawrence A. Simon [190]. The Court will now address the remaining Motions *in Limine* [168, 170, 174, 179, 180, 181, 182] in turn below.

**1. The Court will Grant in Part and Deny in Part "Martinrea's Motion *in Limine* to Exclude Reference to Allegations of Injury or Death Purportedly Caused by Robots" [168].**

Martinrea's first Motion *in Limine* seeks three things: (1) to "prohibit Mr. [Ronald] Pearce, or any other witness, from testifying that a robot 'almost cut a guy's head off,' or words

to that effect because such testimony is inadmissible hearsay;" (2) to "categorically prohibit all testimony related to such contentions because even if a witness has personal knowledge of such an event, the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice;" and (3) to "prohibit any evidence or argument about other alleged injuries and/or accidents in other facilities because it is irrelevant and unfairly prejudicial" Dkt. No. 168 at 11. The Court will **GRANT** this Motion in part with respect to the testimony of Mr. Pearce, but **DENY** this Motion with respect to the categorical preclusion of all such testimony.

### a. Ronald Pearce's testimony regarding whether a robot "almost cut somebody's head off" is inadmissible hearsay and will be excluded.

Mr. Pearce will be excluded from testifying that a robot "almost cut somebody's head off" because he lacks personal knowledge of the event. According to Rule 602 of the Federal Rules of Evidence, "a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." FED. R. EVID. 602. Personal knowledge is comprised of: (1) sensory perception, (2) comprehension of what was perceived, (3) present recollection, and (4) ability to testify based on what was perceived. 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, *Federal Practice and Procedure: Evidence* § 6254, (1st ed.) (citations omitted). The absence of any of these four factors means that an opinion is merely speculative and cannot properly be considered reliable testimony. *Id.*

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). "Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." FED. R. EVID. 802. In order to determine if a statement constitutes inadmissible hearsay, facts must be presented regarding the purpose for which the statement will be

introduced and the identity of the declarant. If a statement is introduced for a purpose other than for the truth of the matter asserted, the statement is not hearsay. *See* FED. R. EVID. 801(c). Similarly, if a statement was made by a party-opponent and is offered against that party, the statement is not hearsay. *See* FED. R. EVID. 801(d). Even if a statement is hearsay, there is a long list of exceptions to the rule rendering hearsay inadmissible. *See* FED. R. EVID. 803, 804, 807.

Here, Gonzalez acknowledges that because Mr. Pearce lacks personal knowledge, "Mr. Pearce's specific statement may be inadmissible if offered during his direct examination[.]" Dkt. No. 199 at 8. Thus Mr. Pearce will not be able to testify that a robot "almost cut the guy's head off," or words to that effect, and the Court will **GRANT** Martinrea's first Motion *in Limine* to exclude Mr. Pearce from testifying about the robots almost cutting off someone's head.

> **b. Provided there is a proper foundation, the Court will not exclude witnesses from testifying that a robot "almost cut somebody's head off" if they have personal knowledge.**

If a testifying witness has personal knowledge that a robot "almost cut somebody's head off," and Gonzalez lays the proper foundation, the Court will not exclude such testimony because the testimony is not unfairly prejudicial. District courts have broad discretion over matters involving the admissibility of evidence at trial. *See U.S. v. Seago,* 930 F.2d 482, 494 (6th Cir. 1991). Under the Federal Rules of Evidence, relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. "Evidence which is not relevant is not admissible." FED. R. EVID. 402. However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.

Martinrea's argument for excluding all testimony regarding whether a robot "almost cut somebody's head off" is twofold. First, Martinrea argues that such testimony would be unfair because Martinrea contends Gonzalez failed to ever disclose any such alleged robot incident or any witness with personal knowledge regarding such an incident. *See* Dkt. No. 215 at 2-6. Martinrea then argues that the evidence would be unduly prejudicial because "[i]f the jury hears some unsupported and unfairly prejudicial hearsay statement and argument that a robot 'almost cut the guy's head off,' or words to that effect – it will conclude that 'those robots were bad' – no matter what else comes into evidence." *Id.* at 6. The Court disagrees.

As an initial matter, there will be no "trial by ambush." *See* Dkt. No. 215 at 2 (citing *Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272 (6th Cir. 1987)). Indeed, the fact that Martinrea knew that this alleged "incident" could be potentially raised when they filed this Motion *in Limine*—four months prior to the beginning of trial—belies any suggestion that "[t]he aggregate of [Gonzalez's] conduct throughout the course of pretrial proceedings [will result] in [] the sort of 'trial by ambush' that the Federal Rules were designed to prevent." *Erskine*, 814 F.2d at 272.

Here, the Pretrial Order is not due until September 1, 2015. In preparation for the Pretrial Order, this Court has instructed counsel for all parties "to confer in person (face to face) at their earliest convenience in order to . . . exchange documents that will be offered in evidence at trial." Dkt. No. 155 at 12. Even after the Pretrial Order is reviewed at the Pretrial Conference set for September 8, 2015, Martinrea will have an additional two weeks to prepare for trial, which is set to commence on September 22, 2015. Given these circumstances, Martinrea will not be subjected to a "trial by ambush" because it has had knowledge that this purported "incident" may be testified about for over four months, and it will have knowledge regarding all exhibits and witnesses who may testify about the incident at least fourteen days before trial. *Cf. Cohara v.*

*CSX Transp. Inc.*, 376 F. App'x 575, 577 (6th Cir. 2010) (noting that the appellant was not a victim of "trial by ambush" like the plaintiff in *Erskine* because " [the appellant] had access to all of [appellee's] evidence at least 10 days before trial[,]" and also noting that the district court correctly observed that "although [appellee's] late disclosures 'may have inconvenienced [appellant] and caused additional work in the days before trial, [the disclosures] did not constitute unfair or prejudicial surprise.'") (citation omitted); *Dewalt v. Consol. Rail Corp.*, 869 F.2d 1489 (6th Cir. 1989) (noting that the case was dissimilar to *Eskrine* because the "documents specifically requested during discovery were not produced by the defendant until they were sprung on the plaintiff *in the middle of the trial*.") (emphasis added); *see also id.* (noting even though the trial court issued a pretrial order "requiring the parties to identify exhibits that 'may be offered at trial,'" and the appellee still "did not announce its intention to offer [the disputed evidence at issue]," there was no abuse of discretion because "'the trial court's 'decision to allow or prohibit testimony or witnesses not described or listed in the pretrial order rests with the sound discretion of the trial judge[.]'") (citation omitted).

Moreover, the Court does not find that the proposed evidence is unduly prejudicial. Martinrea labels the proposed evidence as "a dramatic theatrical production," that will result in unfair prejudice. *See* Dkt. No. 215 at 6.  To be clear, however, "'[u]nfair prejudice' does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *United States v. Bonds,* 12 F.3d 540, 567 (6th Cir. 1993) (internal quotation marks omitted); *see also Koloda v. General Motors Parts Div., General Motors Corp.,* 716 F.2d 373, 378 (6th Cir. 1983) (stating "[o]f course, 'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair'").

Martinrea cites *Dresser v. Cradle of Hope Adoption Center, Inc*., to argue that the testimony is unfairly prejudicial. *See* Dkt. No. 168 at 9 (citing 421 F. Supp. 2d 1024, 1030 (E.D. Mich. 2006)). In *Dresser* the Court found that there can be unfair prejudice in two situations:

> First, when the evidence may tend to prove more than one proposition and thus could be considered for both a proper and an improper purpose, unfair prejudice can result when the improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence. Second, unfair prejudice can result when evidence that is only marginally probative tends to be given preemptive weight by the jury substantially out of proportion to its logical force.

421 F. Supp. 2d at 1030 (internal citations omitted). Martinrea argues that the testimony regarding the robots almost killing someone will be used for an improper purpose and is only marginally probative because "[t]he likelihood that such evidence would inflame jurors' passions and create emotional bias plainly overwhelms any potentially legitimate purpose for offering such allegations." Dkt. No. 168 at 10. Martinrea suggests that the evidence should be precluded because it contends the testimony is unfairly prejudicial as the jury may conclude that "'these robots were bad' – no matter what else comes into evidence." Dkt. No. 215 at 6. Martinrea emphasizes that the probative value of such testimony is outweighed by unfair prejudice because the potential testimony is "unsupported." *Id*. This Court disagrees.

Even applying the two notions of "unfair prejudice" put forth by the Court in *Dresser*, Martinrea has still not demonstrated a risk of unfair prejudice that substantially outweighs the probative value of the evidence. Whether Martinrea met its duty to provide fully functional robots is "a pivotal point of dispute in the case." Dkt. No. 199 at 9. There is no question that the proposed testimony is relevant to the issues of the case. The Court is not convinced that the proposed evidence is "only marginally probative" in "proportion to its logical force" or that an "improper purpose overwhelms or substantially overshadows any legitimate basis for receiving the evidence." *Dresser*, 421 F. Supp. 2d at 1030 (citations omitted).

-10-

To the contrary, the Court finds that the potential evidence of the Martinrea provided robots' malfunctioning and almost injuring someone is critical to Gonzalez's case and is more than marginally probative in proportion to its logical force. The alleged improper purpose does not overshadow the legitimate basis for the testimony. Indeed, categorically excluding any and all testimony of this sort would be overly restrictive and likely be an abuse of discretion. *See*, *e.g.*, *Sutkiewicz v. Monroe Cnty. Sheriff,* 110 F.3d 352, 360 (6th Cir. 1997) (quoting *Doe v. Claiborne County,* 103 F.3d 495, 515 (6th Cir. 1996) for the proposition that "[w]here a decision to exclude evidence on the basis of Rule 403 is overly restrictive such that it precludes a plaintiff from the full opportunity to present his case to a jury, it will be deemed an abuse of discretion.").

With respect to Martinrea's concerns about the evidence being "unsupported," the Court emphasizes that the evidence would have to come through an individual who has personal knowledge of the purported actions of the robots. Thus, even if the witness's testimony is "self-serving and unsupported by other documentary evidence, [the witness] should nevertheless be permitted to testify regarding the [robots, because the witness's] testimony will, of course, be subject to cross-examination by [Martinrea.]" *Nartron Corp. v. Tuthill Corp.*, No. 05-70323, 2006 WL 2042609, at *2 (E.D. Mich. July 20, 2006). Whether the witness's "testimony is believable is ultimately for the jury to decide." *Id.* Accordingly, Martinrea's first Motion *in Limine* will be **DENIED** with respect to excluding witnesses with personal knowledge of a robot almost cutting somebody's head off.

2. **The Court will Deny "Martinrea's Motion *in Limine* to Exclude Gonzalez's Improper Lay Opinion Testimony Concerning Robots and Their Functionality" [170].**

In Martinrea's second Motion *in Limine*, Martinrea requests that this Court prohibit testimony regarding the functionality of the Martinrea-supplied robots from Gonzalez and seven

-11-

Gonzalez Lay witness: "John Merkhofer, Ronald Pearce, Keith Oldford, Michael Blanc, George Wasil, David Hayes, and James Fox." Dkt. No. 170 at 16. Martinrea requests the exclusion of such testimony because Martinrea contends that these individuals will provide "improper lay opinions concerning the Robots and their functionality." Dkt. No. 170 at 16. The Court will **DENY** this Motion *in Limine* because the testimony does not appear to be improper lay opinions.

Rule 701 of the Federal Rules of Evidence covers the admissibility of lay opinions and reads as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701. Subsection (c) of Rule 701 was added in 2000 in order to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701, Advisory Committee Notes for the 2000 Amendments. The Sixth Circuit has explained that the 2000 amendments were meant to foreclose "testimony more properly given by a qualified expert." *United States v. White*, 492 F.3d 380, 400 (6th Cir. 2007)

In distinguishing proper lay testimony from expert testimony, the Sixth Circuit has specified that "lay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. White,* 492 F.3d 380, 401 (6th Cir. 2007) (internal quotation marks and citation omitted). The Sixth Circuit also noted that "[t]he line between expert testimony under Fed. R. Evid. 702 . . . and lay opinion testimony under Fed. R. Evid. 701

. . . is not easy to draw." *Id.* (quoting *United States v. Ayala-Pizarro*, 407 F.3d 25, 28 (1st Cir. 2005)). The Sixth Circuit gave an example contrasting expert and lay opinions by noting that a lay witness may testify, for example, that "a footprint in snow looked like someone had slipped, or that a substance appeared to be blood[,]" but cannot testify that "skull trauma caused the bruises on a victim's face." *Id.* (internal quotation marks and citation omitted).

In applying Rule 701, "the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) (citation omitted); *see also Miss. Chem. Corp. v. Dresser–Rand Co.*, 287 F.3d 359, 373 (5th Cir. 2002) (noting that lay witnesses are only permitted to give opinion testimony when it is "based on personal perception," one "that a normal person would form from those perceptions," and would be "helpful" to the fact finder); *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1199 (3d Cir. 1995) ("[T]he witness's opinion was rationally based on his personal knowledge and . . . the *witness's inability to state precisely why a furnace was inoperable at a particular time was proper material for cross-examination* rather than a basis for inadmissibility.") (emphasis added) (citation omitted); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221 (11th Cir. 2003) ("[T]o the extent that the witness's opinion lacked a technical/medical basis, the defendant had the opportunity to expose this on cross-examination and the *defendant's objections more properly went to the weight and not the admissibility of the evidence*.") (emphasis added) (citation omitted).

Here, Martinrea seeks to exclude lay testimony because the witnesses are unable to state precisely why the robots were not fully functional. However, the disputed witnesses' testimony appears to be well founded on personal knowledge and susceptible to specific cross-examination.

Thus, Martinrea's objections to the testimony go to the weight and not the admissibility of the evidence. *Benton Harbor Eng'g*, 57 F.3d at 1199; *Cedar Shipping Co.*, 320 F.3d at 1221. Indeed, each of the witnesses Martinrea seeks to exclude appear set to give proper lay witness opinion testimony based on personal perception that a normal person would form from those perceptions, and would be helpful to the fact finder. *See Miss. Chem. Corp.*, 287 F.3d at 373.

For example, Martinrea cherry-picks from Mr. John Merkhofer's testimony to argue that he should be precluded from testifying regarding the functionality of the robots because he didn't have specific answers regarding the "functional specifications" for the robots. However, though Martinrea repeatedly attempted to bait Mr. Merkhofer into giving a more "specific"—and seemingly technical—basis for his contention regarding the functionality of the robots, Mr. Merkhofer repeatedly described the non-functionality of the robots based on his experience with the robots in an everyday familiar manner. *See*, *e.g.*, Dkt. No. 170-4 at 4 (Merkhofer Dep. noting that the Martinrea robots "wouldn't function as new robots would," had "saw a lot of service time" and had "seen more wear[,]" before explaining the difference between the Martinrea robots and new robots by noting: "I know we've never had issues in the past using new robots meeting cycle time, have new robots repeat time after time, and we've seen this problem with those robots that came from Martinrea that were used previously.").

If Mr. Merkhofer gave the specific technical testimony Martinrea seeks, it would not be a lay opinion. *See White,* 492 F.3d at 401 ("[E]xpert's testimony results from a process of reasoning which can be mastered only by specialists in the field."). Since "lay testimony results from a process of reasoning familiar in everyday life," *White,* 492 F.3d at 401, the Court is hard pressed to find that Mr. Merkhofer's testimony should be precluded. *See Benton Harbor Eng'g*,

57 F.3d at 1213 (citing *United States v. Myers*, 972 F.2d 1566, 1577 (11th Cir. 1992) to find a "lack of formal training should not prevent the admission of [an] opinion.").

Each of the other witnesses also gave similar testimony that would be insufficient as expert testimony, but not as lay testimony pursuant to Rule 701. For example, with respect to the functionality of the robots, Ron Pearce indicated, "I know that it didn't work – it didn't do what it was supposed to do for whatever reason, I don't know." Dkt. No. 172 at 5 (Pearce Dep.). *But see* Dkt. No. 201-2 at 7 (Pearce Dep. noting that the robots "would move, they would go to a different position when they moved, the brakes would fail and they would not work properly. There was many, many, many problems with those robots. *That's things that I've personally observed . . . [t]hose are things I personally saw*.") (emphasis added).

Keith Oldford definitively answered "no" when asked if he was "an expert, by any means, in ABB IRB 6400 robots." Dkt. No. 170-6 at 5 (Oldford Dep.). Nonetheless, Oldford explained his personal experiences with the robots, describing a "communications issue" and noting "I don't know what created the communication problem. It could be memory. It could be hardware. It could be various things. I'm not qualified to determine that." *Id.* at 6; *see also* Dkt. No. 201-3 at 3 (Oldford Dep. explaining how he worked with other staff "trying to get the robot, weld timer, all the communications between that equipment to function how it should.").

For Michael Blanc, Martinrea similarly asked if he had "any specialized knowledge or experience in the various capabilities and the relevant specifications for the different models of ABB IRB 6400 robots." Dkt. No. 170-7 at 5 (Blanc Dep.). Mr. Blanc answered "no," such that his testimony would not be sufficient for expert testimony. *Id.*  Nevertheless, Mr. Blanc did explain how he witnessed the robots alleged deficiencies through his personal experiences:

> Martinrea was supposed to refurbish the robots. Now when we got out there and they started plugging power into some of the robots – I can't tell you which one

-15-

they were, but I'm sure it's documented someplace – that we had braking problems, some of them wouldn't start up right. They'd program the arm to go up here, and if I set the controller down or I set the teach pin down, the programmer down, it should stay here, and they would – all of the sudden, they would move, right? It shouldn't do that. That's a braking problem[.]

*Id.*; *see also id.* at 7 (standing by his assertion that the "robots didn't react like new." ).

Martinrea seeks to exclude the testimony of George Wasil because of his testimony that he could not "categorically say that the robots are the reason why they didn't make cycle time." Dkt. No. 170-8 at 5. (Wasil Dep.). Nevertheless, this question was immediately preceded by Martinrea noting that Mr. Wasil testified that he "saw variances . . . in terms of the speed with which the robots were operating in different operations." *Id.*; *see also* Dkt. No. 201-5 at 3 (Wasil Dep. "[T]here was issues with the robots being 20-year-old ABB robots, as I remember. They were having robot arm motor failure; there was one that was being replaced when I got on the job. They had problems with the air guns, the guns with cycle time, and they had – they also had used controllers and used PLC equipment.").

Martinrea seeks to exclude David Hayes' testimony because when questioned how he knew the impact that the age of the robots had on the project, he stated "[t]hat would be [] something I would have to ran by engineering[.]" Dkt. No. 173 at 5 (Hayes Dep.). However, this does not undermine his lay opinion, which he states was based on the "[v]isual appearance of robots" Dkt. No. 201-6 at 5 (Hayes Dep.); *see also id.* at 5 ("[S]eeing the conditions and all the extra work we had to put into the robots, I knew that there was probably going to be issues achieving cycle time. . . . It didn't take a rocket scientist to see that those robots were tired.").

Finally, James Fox also noted that "the issues on some of the robots that I witnessed myself in Clark Street were still issues at Martinrea in Shelbyville. . . . I still had people on my back because it wouldn't function properly. . . . I can't say specifically. I can show you within a

couple robots on the line layout where it was at." Dkt. No. 201-7 at 2 (Fox Dep.). Martinrea only points to the lack of specificity that Mr. Fox provided in response to one of its answers, but Martinrea ignores his testimony stating "[e]very time I witnessed an issue with the robot, I made sure that I brought that up to the project manager[.]" Dkt. No. 170-10 at 5.

The testimony Martinrea seeks to exclude is made up of proper lay witness opinions that are well founded on personal knowledge and susceptible to specific cross-examination. *See J.B. Robinson Jewelers*, 627 F.3d at 240. Though Gonzalez's witnesses were unable to provide the level of technical detail in their responses that Martinrea's counsel desired, the witnesses did not claim to be robotics experts, nor did they claim that they were unable to testify regarding their perception of the robot's functionality. The shortcomings and weaknesses identified by Martinrea can be appropriately developed on cross-examination, and go to the weight not the admissibility of the evidence. Thus, the Court will **DENY** this Motion *in Limine* [170].

### 3. The Court will Grant in Part and Deny in Part "Martinrea's Motion *in Limine* to Exclude Lay Witness Testimony Regarding Gonzalez's Alleged Damages" [174].

In its next Motion *in Limine*, Martinrea seeks to "preclude Gonzalez from offering testimony from any lay witness regarding Gonzalez's alleged damages,"  because Martinrea contends that "Gonzalez and its lay witness have no personal knowledge concerning 'the categories' or quantification of Gonzalez's alleged damages and repeatedly deferred all inquiries on damages to Gonzalez's proposed damages expert witnesses." Dkt. No. 174 at 1.  Gonzalez concedes that it does not intend to present evidence of damages "through its engineers and similar lay witnesses[,]" but emphasizes that it intends to present evidence through "its testifying damages expert and its CFO[.]" Dkt. No. 202 at 3. Martinrea takes the position that all lay witnesses should be precluded from testifying. *See* Dkt. No. 217. Because some lay witnesses

-17-

should be able to testify regarding damages, the Court will **GRANT** in part and **DENY** in part Martinrea's third Motion *in Limine* [174].

As discussed, subsection (c) of Rule 701 was added in the Advisory Committee Notes for the 2000 amendments.  However, with respect to lay opinions regarding damages, the Advisory Committee Notes for the 2000 Amendments explain, in relevant part:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

FED. R. EVID. 701, Advisory Committee Notes for the 2000 Amendments; *see also JGR, Inc. v. Thomasville Furniture Indust., Inc.*, 370 F.3d 519, 525 (6th Cir. 2004).

Case law supports Rule 701's applicability to business owners or officers and their testimony as to their business's damages. *See Consol. Rail Corp. v. Grand Trunk W. R. Co.*, 963 F. Supp. 2d 722, 732-33 (E.D. Mich. 2013) *aff'd*, No. 13-2269, 2015 WL 1727306 (6th Cir. Apr. 15, 2015) (citing *Station Enter., Inc. v. Ganz, Inc.,* 07–14294, 2009 WL 3059148 (E.D. Mich. Sept. 24, 2009), which allowed the owners of a business who ran the day-to-day business dealings to testify as to projected profits and/or resulting damages, basing the decision on Rule 701 and the Advisory Committee Notes); *see also Ganz, Inc.,* 2009 WL 3059148, at *2 (citing *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1193 (3d Cir.1993) for the proposition that an author, when preparing a damages report, "may incorporate documents that were prepared by others, while still possessing the requisite personal knowledge or foundation to render his lay opinion admissible under [Rule] 701.").

Here, the parties seem to agree that Ron Pearce, Mike Blanc, Keith Oldford, Al Para and anyone else who lacks personal knowledge regarding the specifics and quantification of damages

should be excluded from testifying about the damages model. Nevertheless, the parties disagree as to whether Stephen Ross, Gonzalez's Chief Financial Officer ("CFO"), and Pat Desmet should be able to testify regarding damages.

With respect to Mr. Ross, Martinrea contends that he should not be able to offer evidence regarding Gonzalez's alleged damages because "Gonzalez stipulated, and Ross admitted that he had no personal knowledge about the categories or calculations of Gonzalez' alleged damages." Dkt. No. 217 (referencing Dkt. No. 174-5 at 5 (Ross Dep.). This position by Martinrea is misleading. After what appears to be a tense and tiresome back and forth, Gonzalez counsel stepped in and stipulated that "this witness does not know what the categories of damages are going to be *in the report*." *See* Dkt. No. 174-5 at 5 (Ross Dep.) (emphasis added). This is not surprising considering the nature of the questions posed to Mr. Ross. *See id.* ("Q. [D]o you have any idea what Mr. Simon is attempting to estimate in terms of an economic loss expert and to quantify in a monetary way."). Mr. Ross' deposition testimony is best construed as an admission and stipulation that he had no personal knowledge about the categories or calculations that would be in Larry Simon's expert damages report. He did not admit that he has no personal knowledge about the categories or calculations of damages of Gonzalez's alleged damages.

If anything, Mr. Ross' deposition, as a whole, seems to indicate that he was directly involved in the business and had first-hand knowledge of the company's day-to-day operations such that his opinion regarding damages would be admissible pursuant to Rule 701. *Compare JGR, Inc.*, 370 F.3d at 525 (referencing *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685-87 (5th Cir. 2003) to exclude a witness's testimony because he lacked " 'the requisite first-hand, personal knowledge' of the company about which he testified" and had "never been an owner, officer or director of the [the company]" and he "admitted he did not independently verify much

-19-

[] information."), *with* Dkt. No. 100-32 (Ross Dep. noting that Ross was the CFO for three years; noting details of purchase orders valuing $5.3 million dollars and stating that Martinrea had paid $4.2 million as of the date of the deposition; explaining the alleged difficulties with Martinrea invoicing; indicating that he was being deposed "to provide any kind of detail . . .as it pertains to accounting and invoicing and collections of what Martinrea owed [] and failed to pay[;]" noting he was "prepared to go through every PO, every line item that [was] invoiced[;]" breaking down complete invoice amounts for  specific purchase orders; addressing purported "arbitrary deductions of $116,433.64;" explaining Gonzalez's understanding of contract and how it affected invoicing on behalf of Gonzalez; and explaining Gonzalez's purported revenue of $5.3 million, costs of $10 million, and $4.7 million loss on project with Martinrea).

With respect to Mr. Desmet, Gonzalez contends that he was "the person at the center of financial negotiations with Martinrea." Dkt. No. 202 at 7. Martinrea did not depose Mr. Desmet and claim they did not do so because he was "effectively concealed[.]" Dkt. No. 217 at 3. To make this point, Martinrea returns to its argument that permitting Mr. Desmet to testify would "result in a trial by ambush and reward Gonzalez's evasive antics." *Id.* As discussed previously, this "trial by ambush" argument is unpersuasive. *See supra* Section III.-A.-1.-b. Thus, if it is established at trial that Mr. Desmet has "'the requisite first-hand, personal knowledge" of the company about which he testified, *JGR, Inc.*, 370 F.3d at 526, his opinion would also be admissible pursuant to Rule 701 of the Federal Rules of Evidence.

In sum, this court will preclude Ron Pearce, Mike Blanc, Keith Oldford, Al Para, and others who lack personal knowledge regarding the specifics of potential damages from testifying or otherwise offering evidence on that topic.[1] However, the Court will permit Mr. Ross and Mr.

---

[1] The Court clarifies that this testimony would be precluded for testimony addressing the quantification of damages only. As Gonzalez points out, some witness "testified that they knew that Gonzalez suffered damages, but they did

Desmet to testify regarding damages if the proper foundation is laid for their testimony at trial. The Court will thus **GRANT** in part and **DENY** in part this Motion *in Limine* [174].

**4.  The Court will Grant in Part and Deny in Part "Martinrea's Motion *in Limine* to Exclude References to any Alleged Corporate Greed, Callousness, Financial Resources or any So-Called 'Deep Pockets' Arguments" [179].**

Martinrea's fourth Motion *in Limine* asks this Court to enter an order "prohibiting Gonzalez from referencing, making argument, or eliciting testimony at trial related to Martinrea's financial resources or so-called 'deep pockets' because it is not relevant and would unfairly prejudice Martinrea." Dkt. No. 179 at 9. Gonzalez contends that it does not intend to argue that Martinrea has "deep pockets" or is currently "wealthy and callous," but maintains that "Martinrea's size and financial condition during the time frame of this dispute are directly relevant to Gonzalez's theory of its case and [] should be permitted[.]" Dkt. No. 203 at 6. The Court will **GRANT** in part and **DENY** in part this Motion *in Limine* because the Court finds Gonzalez's testimony to be relevant, but does not believe Gonzalez needs to address Martinrea's "financial condition" so broadly as to imply that Martinrea has "deep pockets."

The Sixth Circuit has noted that "[e]vidence of financial circumstances is ordinarily not relevant. This is true in a criminal action as well as in civil actions and evidence of the financial condition of the defendant is ordinarily not admissible [sic], though the receiving of such evidence may or may not be found to be prejudicial error, depending on the circumstances." *United States v. Zipkin*, 729 F.2d 384, 390 (6th Cir. 1984) (citations omitted); *see also id.* (quoting *United States ex rel Mertz v. New Jersey*, 423 F.2d 537, 541 (3d. Cir. 1970) to note that some circumstances "may justify the use of evidence of financial embarrassment *in order to show the accused's knowledge and motive*[.]") (emphasis added).

---

not know how to quantify such damages." Dkt. No. 202 at 5. The exclusion of testimony is not to be construed so broadly as to preclude witnesses from testifying regarding alleged damages for which they did have personal knowledge—for example, addressing the functionality of the robots as discussed above.

Here, Gonzalez apparently seeks to reference the "size" and "financial condition" of Martinrea for three narrow reasons: (1) to show that Martinrea expanded and had machinery that "may have come from companies that Martinrea acquired—which meant that Martinrea did not know how the Machinery had been previously used;" (2) to show "internal disorganization," and that "Martinrea's employee turnover rate was high at all levels"—causing instability and problems with the line at issue; and (3) that Martinrea "sought to cut corners on this Ford project, delay payment to Gonzalez and shift costs that should have been covered by Martinrea." *See* Dkt. No. 203 at 6-7.

The Court must weigh the probative value of what Gonzalez seeks to accomplish in the limited areas discussed above, with the potential prejudicial effect of speaking broadly about Martinrea's financial condition or "deep pockets." Gonzalez's arguments are relevant and their probative value is not outweighed by the danger of unfair prejudice under Rule 403 so long as Gonzalez only mentions Martinrea's size and financial condition as it pertains to Martinrea's knowledge and potential motives for Martinrea's actions. *See Zipkin*, 729 F.2d at 390.

As discussed, "[a]ny broad pretrial exclusion of evidence . . . must be approached with great caution." *Land Situated in City of Detroit*, 547 F. Supp. at 681. Instead, the "better practice is to deal with questions of admissibility of evidence as they arise." *Sperberg*, 519 F.2d at 712. At trial, the Court will give the jury a limiting instruction to address Martinrea's concern that the jury could use the evidence presented by Gonzalez for the improper purpose of assuming that Martinrea has "deep pockets." However, because the Court feels that the relevance of emphasizing Martinrea's "financial condition" in a narrow sense outweighs its potentially prejudicial effect—particularly after a limiting instruction is given—the Court will **GRANT** in part and **DENY** in part Martinrea's Motion *in Limine* [174].

-22-

**5.  The court will Grant "Martinrea's Motion *in Limine* to Exclude References to the Court's Summary Judgment Order and Other Pretrial Hearings and Papers" [180].**

The fifth Motion *in Limine* submitted by Martinrea requests "that this Court enter an order *in limine* precluding argument or reference related to the Court's Summary Judgment Order [Docket #118] and other pretrial papers and hearing transcripts." Dkt. No. 180 at 10. Notably, the parties both agree that reference to the Court's summary judgment ruling should be excluded. Moreover, the parties also agree that reference to other pretrial rulings and hearing transcripts should be excluded. Despite this apparent agreement regarding the specific scope of this Motion *in Limine*, the parties disagree about whether the Court should apply the law of the case doctrine. The law of the case doctrine arguments are more directly raised in the briefing for Gonzalez's Motion *in Limine*. *See* Dkt. No. 184. Thus, the Court will address those arguments in Gonzalez's Motion; not this Motion. Because the parties agree with the specific request of this Motion, the Court will **GRANT** Martinrea's fifth Motion *in Limine* [180].

**6.  The Court will Deny Martinrea's Motion *in Limine* to Preclude Contradiction or Rebuttal of Martinrea's Expert Witness Reports [181]**

Next, "Martinrea seeks an order i*n limine* to preclude Gonzalez from offering any alleged expert 'rebuttal' concerning Martinrea's expert witness reports because Gonzalez failed to serve any rebuttal reports or make any rebuttal disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(D)." Dkt. No. 181 at 2. The Court will **DENY** this Motion *in Limine* with a caveat that objections on this issue may be sustained given the nature of Gonzalez's expert testimony.

Rule 26 of the Federal Rules of Civil Procedure provides that, absent a stipulation or court order, a party's expert disclosure "must be made . . . *if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party* under Rule

26(a)(2)(B) or (C), within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii) (emphasis added).

The crux of this dispute centers on whether Gonzalez was required to submit a rebuttal expert report in order to rebut and contradict Martinrea's experts. An opinion by an Alaskan district court provides a direct answer to this question:

> A rebuttal report is not necessary to allow an expert who has provided an initial report to testify about why he disagrees with a different expert's opinions **provided** that in doing so, the expert criticizing the other's opinion does not rely on a basis undisclosed in his initial report. To illustrate: If Expert One says in his initial report that Test A means X is true, and Expert Two opines that X is not true or only partly true in his initial report, Expert One need not provide a rebuttal report in order to critique Expert Two's opinion at trial based on Test A. On the other hand, if in order to rebut Expert Two's opinion, Expert One must rely on Test B which was not disclosed in his initial report, then Expert One may do so only if he provided a rebuttal report making that point.

*Martin v. SMAC Fisheries, LLC*, No. 3:11-CV-00012 JWS, 2012 WL 1951160, at *2 (D. Alaska May 30, 2012) (bold emphasis in original). The Court agrees with this reasoning.

Gonzalez does not dispute that its experts' testimony must be limited to the opinions and reasons given in the initial expert reports. *See* Dkt. No. 205 at 6 (arguing Martinrea's request is misguided because "the basis for the disagreement is squarely explained in the expert's timely disclosed expert report [pursuant to Rule 26(a)(2)(D)(i),]" and also noting that "[a]t trial, Gonzalez intends to rely on the expert opinions disclosed in its principal Reports."). Accordingly, to the extent that Gonzalez's experts attempt to rely on new rationale or opinions at trial, the Court will hear Martinrea's objections because there are no rebuttal expert reports. However, because rebuttal reports are not necessary, this Motion *in Limine* seeking to prohibit Gonzalez from introducing expert testimony critical of Martinrea's expert's rationale and opinions is **DENIED** because Gonzalez's experts may do so in reliance on their own initial rationale and opinions.

-24-

**7. The Court will Deny "Martinrea's Motion *in Limine* to Enforce this Court's Order Concerning 'Cycle Time Observations' and 'Robot Inspection, Maintenance, Repair or Replacement' Records" [182].**

For Martinrea's seventh Motion *in Limine*, Martinrea seeks an order "(1) precluding Gonzalez from introducing evidence at trial concerning cycle time observations other than [four records it produced pursuant to Court Order], and (2) precluding Gonzalez from introducing any evidence at trial concerning robot inspection, maintenance, repairs or replacements by Gonzalez." Dkt. No. 225 at 4. This Motion *in Limine* will also be **DENIED**.

Martinrea seeks the preclusion of the evidence at issue in this Motion pursuant to Rule 37 of the Federal Rules of Civil Procedure because Martinrea contends that Gonzalez did not comply with a discovery order of this Court. Rule 37 provides, in relevant part:

> If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a) (4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include . . . (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.

Fed. R. Civ. P. 37(b)(2)(A)(ii). In other words, Rule 37(b)(2)(A)(ii) gives the Court authority to prohibit a disobedient party from supporting or opposing designated claims for defenses, or from introducing designated matters in evidence. Implicit in the Rule 37 sanction is the acknowledgment that a party was disobedient. Martinrea's argument fails because Martinrea has not demonstrated that Gonzalez violated any Court Order.

For example, with respect to the "cycle time observation records," this Court's Order mandated Gonzalez to "produce to Martinrea . . . 1. the cycle time *Excel spreadsheet and any other records* that evidence the observed run at rate or cycle time of the system[.]" Dkt. No. 117 at 7 (emphasis added). Gonzalez contends that it "produced all responsive documents that it had in its possession[,]" including "various documents containing references to observations

contained in emails and spreadsheets." Dkt. No. 206 at 6. Martinrea acknowledges that "Gonzalez produced four (4) documents: GPS4531-4533; GPS 4545-4548; GPS 4535-4544; and GPS 4549-4558." Dkt. No. 225 at 3. Martinrea also notes that the four documents constituted "the cycle time Excel spreadsheet and any other records that evidence the observed run at rate or cycle time of the C520 Martinrea system[.]" Dkt. No. 182 at 6 (citation omitted).  Thus, Martinrea received the *records* that it requested.

Now, however, "Martinrea contends that Gonzalez must be limited to these four documents." Dkt. No. 225 at 3. As justification, Martinrea points to Rule 37 stating that "Gonzalez's position necessitates . . . precluding Gonzalez from offering any testimony regarding cycle time observations other than the four records it produced pursuant to Court Order." Dkt. No. 225. This argument does not pass muster because Martinrea has not shown that Gonzalez failed to comply with a Court order.

The Court ordered Gonzalez to produce *record* evidence. *See* Dkt. No. 117. Martinrea concedes that Gonzalez produced four *records* "pursuant to Court Order." Dkt. No. 225. Accordingly, Martinrea has provided "insufficient evidence that [Gonzalez] violated" a Court order and  a Rule 37 sanction is inapplicable. *See Epicentre Strategic Corp.--Michigan v. Cleveland Const., Inc.*, No. CIV. 04-40278, 2007 WL 1017644, at *15 (E.D. Mich. Mar. 30, 2007) (quoting *Taydus v. Cisneros,* 902 F.Supp. 288, 295 (D. Mass. 1995)); *see also id.* (citing *Brandt v. Vulcan, Inc.,* 30 F.3d 752, 755-56 (7th Cir.1994) to state "[i]f  [the party] wishes to obtain such sanctions, it must comply with the procedural requirements of Rule 37(a) and (b).").

The same goes for the "robot inspection, maintenance, repair or replacement records." This Court's Order mandated Gonzalez to "produce to Martinrea . . . 3. the robot inspection, maintenance, repair, and replacement records[.]" Dkt. No. 117 at 7. Martinrea points out that

Gonzalez indicated "it does not have any such records," so Gonzalez should be precluded from introducing evidence regarding the topic. *See* Dkt. No. 182 at 6 (citing Dkt. No. 182-3 at 23). Martinrea's position is disingenuous at worst and misleading at best.

Martinrea provided an abridged version of Gonzalez's interrogatory response. Looking at the Gonzalez's interrogatory response in context is illuminating:

> Martinrea has sought production of any robot inspection, maintenance, repair, and replacement records relating to the program that Gonzalez may have in its possession or control. Gonzalez hereby certifies that it does not have any such records. Martinrea (not Gonzalez) hired ICR to inspect, maintain, and repair the robots Martinrea contracted to provide. As it was not within Gonzalez's contractual responsibility to inspect, maintain, repair or replace robots, Gonzalez entrusted these tasks to Martinrea, which contracted with ICR. Documents generally discussing problems with the Martinrea-provided robots include but are not limited to open issues.

Dkt. No. 182-3 at 23. Thus, Gonzalez argues it had minimal documentation regarding robot inspection, maintenance, repair, and replacement because it was Martinrea who assumed contractual responsibility for the robots.  Accordingly, Gonzalez argues that such documentation should have been kept by Martinrea and/or by the third party contractor, Industrial Control Repairs ("ICR"), Martinrea hired to do the job. Because it was not responsible for keeping the records, Gonzalez indicated that it gave Martinrea copies of Gonzalez's documented "open issues" with the robots. *See* Dkt. No. 206 at 8. Moreover, and critically, to comply with the Court's order, Gonzalez claims that it, not Martinrea, "served a third-party subpoena on ICR . . . for its project records, and when Gonzalez obtained these records it delivered a copy of them to Martinrea." *Id.*  Martinrea does not even attempt to address Gonzalez's contentions in its Reply, and simply reiterates its previous arguments. *See* Dkt. No. 225 at 3-4. Accordingly, Martinrea has again provided insufficient evidence that Gonzalez violated a Court order such that a Rule 37

sanction is inapplicable. *See Epicentre Strategic Corp.--Michigan v*, 2007 WL 1017644, at *15. As such, the Court **DENIES** Martinrea's seventh Motion *in Limine* [182].

### B. GONZALEZ'S MOTIONS

Gonzalez submitted one Motion *in Limine* seeking five different orders *in limine.* The Court resolved "Evidentiary Issues Numbers One and Two," covering the scope of Martinrea's expert testimony in the August 13, 2015 Opinion and Order. "Evidentiary Issues Three, Four, and Five" are addressed below.

### 1. The Court will Deny Without Prejudice Gonzalez's Request to Prohibit Martinrea from Eliciting Inadmissible Legal Conclusions from Lay Witnesses.

Gonzalez's third request in its Motion *in Limine* seeks an order "precluding Martinrea from eliciting legal opinions from any fact witnesses." Dkt. No. 184 at 23. Following Martinrea's Response to Gonzalez's Motion, Gonzalez proposed "that its request to restrict the introduction of lay opinions be denied without prejudice and revisited if Martinrea's counsel engages in inappropriate cross-examination by asking witnesses about legal conclusions without laying a proper foundation." Dkt. No. 218 at 7. The Court agrees. *See Sperberg*, 519 F.2d at 712 (noting that the "better practice is to deal with questions of admissibility of evidence as they arise."). Accordingly, this Court will **DENY** this request **WITHOUT PREJUDICE**.

### 2. The Court will Deny Gonzalez's Request for an Order *in Limine* that the Court's Summary Judgment Decision is the Law of the Case.

Gonzalez's fourth request is for an order *in limine* "prohibiting re-litigation of issues already decided by the Court's summary judgment opinion." Dkt. No. 184 at 23. For example, Gonzalez seeks to prohibit Martinrea from presenting its "fixed-price" contract theory to the jury, and to prohibit Martinrea from using the word "settlement" to describe the parties' discussions regarding cost overruns. *See id.* at 21. Gonzalez argues that the "law of the case" doctrine precludes Martinrea from re-litigating issues already resolved by this Court.

Alternatively, Gonzalez argues that addressing such topics would be unduly prejudicial as it would confuse the issues. *See id.* The Court will **DENY** this request.

The Court finds that the law of the case doctrine does not apply here after reviewing an opinion by Magistrate Judge Joseph G. Scoville out of the United States District Court for the Western District of Michigan. *See Stryker Corp v. TIG Ins. Co.*, No. 1:05-CV-51, 2014 WL 198678, at *1-2 (W.D. Mich. Jan. 15, 2014) *aff'd sub nom. Stryker Corp. v. TIG Ins. Co.*, No. 1:05-CV-51, 2014 WL 1328151 (W.D. Mich. Apr. 1, 2014). After noting that "[t]he law of the case doctrine is much misunderstood by both lawyers and courts," Judge Scoville proceeds to explain when the doctrine is appropriate as follows:

> Cases applying the law of the case doctrine arise in two distinct circumstances. The first arises when a case has been remanded by an appellate court. In such circumstances, the trial court is bound to proceed in accordance with the mandate and the law of the case as established by the appellate decision. *See, e.g., Goldberg v. Maloney,* 692 F.3d 534, 538 (6th Cir.2012); *Hanover Ins. Co. v. Am. Eng'g Co.,* 105 F.3d 306, 312 (6th Cir.1997). Once an appellate court decides upon a rule of law, "that decision should continue to govern the same issues in subsequent stages of the same case." *Scott v. Churchill,* 377 F.3d 565, 569–70 (6th Cir.2004) (quotation and citation omitted). . . . This branch of the law of the case doctrine, sometimes called the "mandate rule," has no application to the present case, as [the defendant] is not relying on any finding of the Sixth Circuit Court of Appeals.
>
> The other species of the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States,* ⸺ U.S. ⸺, ⸺–, 131 S.Ct. 1229, 1250, 179 L.Ed.2d 196 (2011) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). In contrast to the mandate rule, which is a rule of preclusion, this aspect of the law of the case doctrine does not limit the court's power, but merely directs its discretion. *Pepper,* 131 S.Ct. at 1250. . . . Thus, in contrast to the mandate rule, pursuant to which the district court is virtually bound to follow a previous appellate holding, this aspect of the law of the case doctrine is purely discretionary, allowing the district court to revisit previous decisions on the basis of new evidence, new law, or a determination that the previous decision was not sustainable. *See American Canoe,* 326 F.3d at 515.

*Id.* at 1-2.  Critically, Judge Scoville correctly noted that "[u]nder any appropriate view of the law of the case doctrine, therefore, the decisions embodied in [a] summary judgment opinion . . . will be subject to possible reconsideration . . . in subsequent proceedings." *Id.* at 2. Accordingly, the law of the case doctrine does not prohibit re-litigation of the summary judgment decision.

Nevertheless, the Court already ruled that the contract at issue was not a pure fixed price contract, *see* Dkt. No. 118 at 6-10, and that Martinrea did not demonstrate that there was an unambiguous settlement and release of any and all claims for additional compensation, *see id.* at 19-22. Martinrea did not file a motion for reconsideration, and has *not* provided the Court with reason to revisit those findings. Moreover, and importantly, Martinrea does not assert, or indicate, that the Court needs to revisit those findings.

Martinrea contends that "it does not intend to argue during trial that the parties entered into a 'pure fixed price' contract," Dkt. No. 220 at 5, and "does not intend to offer evidence that the parties agreed to 'settle' all of Plaintiff's claims," *Id.* at 6. Instead, Martinrea contends that it only intends to "reference the 'fixed price' contained in the Contract's terms" to reference the fact that there was a bilateral agreement between the parties where each party had an obligation under the contract. *See id.* at 5-6 (referring to Dkt. No. 118 at 12-14). The Court sees no problem with such testimony, so long as there is no mention of a "pure fixed price contract." Additionally, Martinrea asserts that it "does intend to offer evidence that the parties settled some of Gonzalez's claims" Dkt. No. 220 at 6. So long as Martinrea confines its testimony to "the undisputed and relevant . . . ECN claims," Dkt. No. 201 at 18, that "[b]oth parties' damage experts accepted . . . were settled and paid[,]" Dkt. No. 220 at 7, the Court, again, sees no problem with such testimony.  Accordingly, so long as Martinrea does not revisit issues this Court has already decided, as Martinrea has indicated, the Court will **DENY** this request.

**3.  The Court will Deny Without Prejudice Gonzalez's Request for an Order *in Limine* Requiring Live Testimony Where Available.**

Lastly, Gonzalez requests an order "requiring the presentation of live testimony from all witnesses, not deposition snippets." Dkt. No. 184 at 23. The Federal Rules of Civil Procedure express an unmistakable preference for live testimony in open court over testimony taken in a deposition. *See* FED. R. CIV. P. 32(a)(4)(E). This Court also has a strong preference for live testimony. *See White v. Illinois,* 502 U.S. 346, 356, 112 S.Ct. 736, 116 L.Ed.2d 848 ("The preference for live testimony . . . is because of the importance of cross-examination, 'the greatest legal engine ever invented for the discovery of truth.'") (citation omitted).  Martinrea asserts that this "is a non-issue." Dkt. No. 210 at 19. Indeed, the parties appear to have worked out the live appearance of witnesses at trial. *See* Dkt. No. 156-2 at 3. Because it appears an agreement has been worked out such that witnesses will testify live, the Court will **DENY** this request **WITHOUT PREJUDICE**. Gonzalez may re-raise this matter if it becomes a concern.

## IV. CONCLUSION

These are the rulings of the Court. The Court emphasizes that "[a] ruling on a motion *in limine* is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court . . . the district court may change its ruling at trial for whatever reason it deems appropriate," and "where sufficient facts have developed to warrant the change."  *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce,* 713 F.2d 1236, 1239 (6th Cir. 1983) *aff'd,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

Accordingly, the Court **GRANTS** Martinrea's Motion *in Limine* to Exclude References to the Court's Summary Judgment Order and Other Pretrial Hearings and Papers [180].

The Court **GRANTS** in part and **DENIES** in part Martinrea's Motions *in Limine* to Exclude Reference to Allegations of Injury or Death Purportedly Caused by Robots [168]; to

Exclude Lay Witness Testimony Regarding Gonzalez's Alleged Damages [174]; and to Exclude References to any Alleged Corporate Greed, Callousness, Financial Resources or any So-Called "Deep Pockets" Arguments [179].

The Court **DENIES** Martinrea's Motions *in Limine* to Exclude Gonzalez's Improper Lay Opinion Testimony Concerning Robots and Their Functionality [170]; to Preclude Contradiction or Rebuttal of Martinrea's Expert Witness Reports [181]; and to Enforce this Court's Order Concerning "Cycle Time Observations" and "Robot Inspection, Maintenance, Repair or Replacement" Records [182].

Likewise, the Court **DENIES** in part Gonzalez's Motion *in Limine* [184]—specifically, the requests with respect to Evidentiary Issues Three Four and Five.

IT IS SO ORDERED.

Dated: August 18, 2015

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge